504 P.2d 972

George W. HANIGAN and Mildred L. Hanigan, husband and wife, Appellants,

v.

Larry F. WHEELER et al., Appellees.

No. 2 CA–CIV 1287.

Court of Appeals of Arizona, Division 2.

Dec. 27, 1972.

---

**50**

Cusick, Watkins, Stewart & Harris, by Frank H. Watkins, Tucson, for appellants.

Barber, Haralson, Giles & Moore, by Michael M. Moore, Tucson, for appellees.

HOWARD, Judge.

This appeal arises out of a complaint petitioning for declaratory relief pursuant to A.R.S. § 12–1831 et seq., as amended. Appellees sought a judgment adjudicating the rights and duties of plaintiffs and defendants under a contract; for a judgment declaring the rights and duties of the parties under a "Store Agreement"; for a judgment requiring defendants to consent to the sale of certain property, or in the alternative, for the issuance of a permanent injunction enjoining defendants from interfering with the contractual relations of the plaintiffs.

Defendants-appellants filed an answer and counterclaim to which was attached a motion for summary judgment and motion to dismiss the action as it pertained to plaintiffs Wheeler for failure to state a claim. The gist of the answer was that the store agreement did not require adjudication because the matters therein stated were clear and concise, and that the appellees had no rights under the deposit receipt and agreement because of a condition precedent therein providing that "This sale is subject to the approval of George Hanigan, Area Franchise Holder."

At a hearing on the motions the court decided that it had jurisdiction under the declaratory judgment statute and it denied the motion for summary judgment and motion to dismiss. Thereafter the trial proceeded to the court on the merits. A declaratory judgment was entered ruling in essence that the provisions in the Store Agreement disallowing assignment without the consent of the holder of the franchise was unenforceable as against public policy, amounting to an unreasonable restraint on the alienation of property; that defendant Hanigan acted unreasonably, arbitrarily and capriciously in withholding his approval of the sale; and that Hanigan had a

duty to consent to the sale of the Dairy Queen franchise, the subject matter of the deposit receipt and agreement between plaintiffs Lemoine and Wheeler.

The facts leading to litigation are as follows. In August, 1962, George Hanigan entered into a "Dairy Queen Store Agreement" with appellee Eileen A. LeMoine. This bilateral contract provided for certain duties and services to be performed by each of the contracting parties. For purposes of this appeal, the only material provision of the contract stated:

"Second Party shall not assign or transfer this Agreement without the written approval of First Party."

On March 7, 1972, appellees LeMoine entered into a deposit and receipt agreement with appellees Wheeler for the sale of the Dairy Queen franchise in question, as well as the real property located and built specifically for that franchise.

The real estate agent, Robert A. Wackerly, who prepared the deposit and receipt agreement contacted Hanigan two days later concerning the sale and appears to have made subsequent attempts to gain Hanigan's approval of the sale and to arrange a meeting with the potential purchasers. Evidence consisting of two tape-recorded telephone conversations held on March 27th between Hanigan and Wackerly and between Hanigan and Mr. Moore, attorney for appellees, were admitted by the court. Among other reasons for refusing to approve the sale, Hanigan stated that the price of $90,000 was too high and that based on his experience an inflated sales price was detrimental to the Dairy Queen business.

Thereafter, litigation was commenced on March 31, 1972, and a meeting between Hanigan and the Wheelers took place on May 8th. After the meeting Hanigan advised appellees' counsel that he would not approve the sale for the reasons that the Wheelers were inexperienced in business matters and were too young to properly run a Dairy Queen franchise. Mr. Wheeler is a practicing dentist and Mrs. Wheeler is a housewife with no children. Their ages are 34 and 32 respectively.

The primary question dispositive of this appeal is whether the trial court erred in determining that the contract provision precluding the franchise transfer without the area franchise holder's approval is unenforceable as against public policy. A review of the record and the relevant law leads us to answer this question in the affirmative. Given the instant fact situation, the law in this area does not warrant the trial court's order requiring Hanigan to consent to the subject transaction:

"As a general rule, a contract is not assignable where the nature or terms of the contract make it nonassignable, [footnote omitted] unless such provision is waived. . . . The parties may in terms, by a provision in the contract, prohibit an assignment thereof, . . ." 6 C.J.S. Assignments § 24.b (1937).

"Provisions in bilateral contracts which forbid or restrict assignment of the contract without the consent of the obligor have generally been upheld as valid and enforceable when called into question, [footnote omitted] although the meaning of such terms becomes a matter of interpretation. . . ." 6 Am.Jur. 2d Assignments § 22 (1963).

These general statements are in accord with the Restatement of the Law of Contracts § 151, which reads as follows:

"A right may be the subject of effective assignment unless, . . .

\*   \*   \*   \*   \*   \*

(c) the assignment is prohibited by the contract creating the right."

The treatises on this subject are likewise in accord. See 3 S. Williston, A Treatise on the Law of Contracts § 422 (3d ed. 1960); J. Calamari and J. Perillo, The Law of Contracts § 267 (1970).

A leading case, Allhusen v. Caristo Construction Corporation, 303 N.Y. 446, 103

N.E.2d 891 (1952); 37 A.L.R.2d 1245 (1954), stated the law as follows:

". . . we think it is reasonably clear that, while the courts have striven to uphold freedom of assignability, they have not failed to recognize the concept of freedom to contract. In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited. When 'clear language' is used, and the 'plainest words * * * have been chosen', parties may 'limit the freedom of alienation of rights and prohibit the assignment.' State Bank v. Central Mercantile Bank, supra, 248 N.Y. [428] at page 435, 162 N.E. [475] at page 477, 59 A.L.R. 1473. . . .

Such a holding is not violative of public policy. Professor Williston, in his treatise on Contracts, states (Vol. 2 § 422, p. 1214): 'The question of the free alienation of property does not seem to be involved.'" 103 N.E.2d at 893.

In opposition to the above principles, appellees contend that more than a contract right is involved in the case at bench in that the subject clause restricting assignment without Hanigan's approval serves as an unreasonable and unlawful restraint on the right of alienation of property, since the Store Agreement provides no guidelines by which the area franchise holder is to base his approval or disapproval of potential buyers, and that hypothetically, through the whim or arbitrariness of the holder, the LeMoines could be prevented from ever selling their franchise and the property associated with the franchise.

■ We accept the fundamental principle that one of the primary incidents inherent in the ownership of property is the right of alienation or disposition. 63 Am. Jur.2d § 47 (1972). However, this right is not limitless. The right to make an assignment of property can be defeated where there is a clear stipulation to that

effect. Robinson v. Perry, 21 Ga. 183, 68 Am.Dec. 455 (1857); 6 C.J.S. Assignments § 24.b (1937). The current state of the law in this area appears to be that a restraint on the alienation of property may be sustained when the restraint is reasonably designed to attain or encourage accepted social or economic ends. In Gale v. York Center Community Cooperative, Inc., 21 Ill.2d 86, 171 N.E.2d 30 (1960), the court upheld a partial restraint on the alienation of property interests of members of a co-operative housing association in order to assure the continued existence of the association. Likewise, in Penthouse Properties, Inc. v. 1158 Fifth Avenue, Inc., 256 App.Div. 685, 11 N.Y.S.2d 417 (1939), the court upheld as valid contractual restrictions on the right to transfer stock and to assign a proprietary lease in a co-operative apartment house.

■ We also perceive that despite the restriction on assignment of the store agreement, the LeMoines are not entirely powerless. Where a contract contains a *promise* to refrain from assigning, an assignment which violates it would not be ineffective.[1] "The promise creates a *duty* in the promisor not to assign. It does not deprive the assignor of the *power* to assign and its breach, therefore, would simply subject the promisor to an action for damages while the assignment would be effective. . . ." J. Murray, Jr., Grismore on Contracts § 258 at 421 (1965).

■ In summary, we hold that the law as set forth above demonstrates that the contract limitation against assignment of the Store Agreement without the approval of the area franchise holder is proper and valid. The trial court erred in concluding that the provision limiting assignability was unenforceable as against public policy. The court also erred in ruling that defendants had a duty to consent to the franchise sale, for this is contrary to the manifested intention of the parties to

1. This type of restriction is to be distinguished from a provision which renders the assignment void. Such a provision has been held to be valid and deprives the assignor of the *power* to assign. J. Calamari and J. Perillo, op. cit. p. 417.

the contract. The general proposition is that " 'a covenantor is not to be held beyond his undertaking and he may make that as narrow as he likes.' " 3 S. Williston, supra, § 422 at 128.

The judgment below is reversed and the cause is remanded with directions to enter an appropriate declaratory judgment in accordance herewith.

KRUCKER, C. J., and HATHAWAY, J., concur.