MARCO RUMBIN *v.* UTICA MUTUAL INSURANCE COMPANY ET AL.
(SC 16213)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

(*Two justices dissenting in one opinion*)

Argued January 11—officially released August 15, 2000

· *Thomas G. Rohback*, with whom were *Katherine A. Scanlon* and *Peter J. Vodola*, for the appellant (defendant Safeco Life Insurance Company).

*Michael J. Walsh*, with whom was *Ann W. Henderson*, for the appellee (intervening plaintiff).

*Eliot B. Gersten* filed a brief for the National Association of Structured Settlement Purchasers as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The defendant Safeco Life Insurance Company (Safeco), appeals from the judgment of the trial court approving the transfer by the plaintiff, Marco Rumbin, of payments due to him under an annuity issued pursuant to a structured settlement agreement between the plaintiff and the named defendant, Utica Mutual Insurance Company (Utica Mutual).[1] The plaintiff proposes to sell the remaining payments to the intervening plaintiff, J. G. Wentworth.[2] The principal

---

[1] The only party objecting to the sale of the annuity contract is Safeco, the issuer of the annuity contract. Utica Mutual is not a party to this appeal.

[2] For the remainder of this opinion, we use the term "plaintiff" to refer to Rumbin and the term "plaintiffs" to refer to both the named plaintiff, Rumbin, and the intervening plaintiff, Wentworth.

issues in this appeal are: (1) whether General Statutes § 52-225f[3] invalidates antiassignment provisions that are

[3] General Statutes § 52-225f provides: "(a) For purposes of this section:

"(1) 'Annuity issuer' means an insurer that has issued any insurance contract used to fund periodic payments under a structured settlement;

"(2) 'Expenses' means all broker's commissions, service charges, application or processing fees, closing costs, filing or administrative charges, legal fees, notary fees and other commissions, fees, costs and charges payable by the payee in connection with the proposed transfer or deductible from the gross consideration that would be paid to the payee in connection with the transfer;

"(3) 'Interested parties' means, with respect to any structured settlement, the payee, any beneficiary designated to receive payments following the payee's death or, if the designated beneficiary is a minor, the designated beneficiary's parent or guardian, the annuity issuer and the structured settlement obligor;

"(4) 'Payee' means an individual who is receiving payments under a structured settlement and proposes to make a transfer of payment rights thereunder;

"(5) 'Structured settlement' means an arrangement for periodic payment of damages established by settlement or judgment in resolution of a tort claim or for periodic payments in settlement of a workers' compensation claim;

"(6) 'Structured settlement obligor' means, with respect to any structured settlement, the party that has the continuing periodic payment obligation to the payee under a structured settlement agreement or under an agreement providing for a qualified assignment within the meaning of Section 130 of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended;

"(7) 'Structured settlement payment rights' means rights to receive periodic payments, including lump sum payments, under a structured settlement, whether from the settlement obligor or the annuity issuer;

"(8) 'Transfer' means any sale, assignment, pledge, hypothecation or other form of alienation or encumbrance made for consideration;

"(9) 'Transfer agreement' means the agreement providing for transfer of structured settlement payment rights from a payee to a transferee; and

"(10) 'Transferee' means any person receiving structured settlement payment rights resulting from a transfer.

"(b) No transfer of structured settlement payment rights, either directly or indirectly, shall be effective by any payee domiciled in this state or by any payee entitled to receive payments under a structured settlement funded by an insurance contract issued by an insurer domiciled in this state or owned by an insurer or corporation domiciled in this state and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of any such transfer unless (1) not less than ten days prior to the date on which the payee entered into the

included in structured settlement agreements and annuities issued pursuant to such agreements; and (2) whether the antiassignment clause contained in the

transfer agreement, the transferee provided to the payee a written disclosure statement setting forth (A) the amounts and due dates of the structured settlement payments to be transferred; (B) the aggregate amount of the payments; (C) the gross amount of all expenses; (D) the amount payable to the payee, net of all expenses, in exchange for the payments; (E) the discounted present value of all structured settlement payments to be transferred and the discount rate used in determining such discounted present value; and (F) a statement that the payee may be subject to adverse federal and state income tax consequences as a result of the proposed transfer; and (2) such transfer has been approved by a court pursuant to subsection (c) of this section.

"(c) (1) Prior to any transfer, the payee entitled to receive payments under such structured settlement shall commence a declaratory judgment action under section 52-29 for a determination as to whether the transfer of such structured settlement payment rights is in the best interests of the payee and is fair and reasonable to all interested parties under all of the circumstances then existing. The annuity issuer and the structured settlement obligor shall be made parties to such action. If the court determines, after hearing, that such transfer should be allowed, it shall approve such transfer upon such terms and conditions as it deems appropriate.

"(2) The court in which the original action was or could have been filed or the court which has jurisdiction where the applicant resides shall have jurisdiction over any such action.

"(3) The payee shall cause notice of the action to be served on all interested parties by a proper officer or other person lawfully empowered to make service. The notice of the action shall include (A) a copy of the payee's application to the court for approval of the transfer, (B) a copy of the disclosure statement required under subsection (b) of this section and (C) notice of the hearing.

"(4) The payee may seek an order setting the deadline for the filing of written objections. The payee shall give notice to all interested parties of the deadline for filing objections whether such deadline has been established by court order or by operation of the general statutes or court rule. Notice shall be mailed to all interested parties at least ten days before such deadline.

"(5) The court shall hold a hearing on the application. The payee shall give notice of the hearing to all interested parties.

"(d) Nothing contained in this section shall imply that any transfer under a transfer agreement dated prior to October 1, 1998, is binding upon any interested party or that any annuity issuer or structured settlement obligor is under any obligation to make transferred payments to the transferee of any such prior transfer.

"(e) The provisions of this section may not be waived."

annuity issued by Safeco[4] for the plaintiff beneficiary invalidates his assignment to Wentworth. We conclude that § 52-225f does not invalidate such antiassignment provisions. We further conclude that, under Connecticut common law, the antiassignment provision in the annuity contract does not invalidate the plaintiff's assignment of his right to payments under the annuity to Wentworth. In accordance with case law and § 322 of the Restatement (Second) of Contracts, an antiassignment provision that does not limit the power to assign or expressly invalidate the assignment does not render the assignment of the annuity ineffective. Safeco, however, has the right to recover damages for the plaintiff's breach of the antiassignment provision. We therefore affirm the judgment of the trial court.

The record reveals the following facts. In April, 1998, the plaintiff and Utica Mutual entered into a structured settlement agreement to resolve a personal injury claim. Pursuant to that settlement agreement, the plaintiff was to receive from Utica Mutual a lump sum payment, followed by a series of periodic payments over the next fifteen years.[5] The structured portion of the settlement

[1] The plaintiffs also raise the claim that Safeco lacks standing to pursue the present appeal because Safeco was not a party to the structured settlement agreement between Utica Mutual and the plaintiff and because the plaintiff was not a party to the annuity contract between Utica Mutual and Safeco and, therefore, there was no privity of contract between Safeco and the plaintiff. We do not find it necessary to reach the plaintiffs' claim that Safeco lacked standing because the only relevant antiassignment provision in this case is the one in the annuity contract, the only agreement to which Safeco is a party. We acknowledge that Safeco is statutorily authorized to pursue this appeal. In a declaratory judgment action to determine whether a payee can transfer his structured settlement payment rights, "*[t]he annuity issuer . . . shall be made [a party] to such action. . . .*" (Emphasis added.) General Statutes § 52-225f (c) (1). Given that Safeco issued the annuity contract to fund the payments due to the plaintiff under the settlement agreement, Safeco fits the definition of an annuity issuer under the statutory provision.

[5] Under the terms of the settlement agreement, the plaintiff was entitled to receive $52,000 within thirty days of its execution, thirty semiannual payments of $1323.09 beginning on March 6, 1999, and a final lump sum payment of $44,000 on March 6, 2014.

was funded by the annuity contract issued by Safeco. The annuity contract provided under its "Assignment" provision that "[n]o payment under this annuity contract may be . . . assigned . . . in any manner by the [plaintiff] . . . ."[6]

Approximately six months after the execution of the settlement agreement and the issuance of the annuity, the plaintiff had become unemployed and faced a mortgage foreclosure action against his home, where he lived with his family. In order to resolve his financial troubles, the plaintiff decided to sell his right to the annuity payments. In November, 1998, he filed a declaratory judgment action seeking court approval, pursuant to No. 98-238, § 1, of the 1998 Public Acts (P.A. 98-238), now codified at § 52-225f, to transfer his right to the remaining annuity payments to Wentworth in exchange for a lump sum payment and other consideration. Safeco objected to the assignment, claiming that because the annuity contract contained an antiassignment provision, P.A. 98-238 was inapplicable. Utica Mutual neither appeared at that hearing, nor provided an explanation for its failure to appear, and the trial court issued an order of default for failure to appear against Utica Mutual.[7]

---

[6] The plaintiff has not claimed that the annuity contract is a contract of adhesion. Typically, "life insurance contracts are [considered] contracts of adhesion because [t]he contract is drawn up by the insurer and the insured, who merely adheres to it, has little choice as to its terms. . . . Standardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not subject to the normal bargaining processes of ordinary contracts." (Citation omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 416, 538 A.2d 219 (1988). A review of the annuity contract in the present case reveals that it is a preprinted, standardized insurance contract in which the plaintiff was the named annuitant. It was not a contract arrived at by actual negotiation between the parties. We disagree with the dissent's characterization of the antiassignment clause as a bargained for provision of the annuity contract.

[7] Utica Mutual has not challenged that order and, therefore, is not a party to this appeal.

The trial court, after a hearing, concluded that P.A. 98-238 invalidated antiassignment provisions and allowed payees to transfer their rights to future payments under structured settlement agreements when the statutory requirements were met. The trial court further found that, pursuant to P.A. 98-238, the proposed sale of the annuity payments was in the best interests of the plaintiff, and was fair and reasonable to all interested parties. Accordingly, the court rejected Safeco's claim concerning the applicability of the antiassignment provision, and rendered judgment approving the transfer of the plaintiff's annuity payments to Wentworth. Safeco appealed from the trial court's judgment to the Appellate Court, and we transferred the case to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

I

We first consider Safeco's claim that the trial court improperly concluded that the language of § 52-225f invalidates antiassignment provisions in structured settlement agreements and annuities issued pursuant to such agreements. We agree with Safeco, and conclude that the language of § 52-225f does not abrogate the common-law right to include an antiassignment provision in such an agreement or annuity.

It is well settled that "[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. . . . We recognize only those alterations of the common law that are clearly expressed in the language of

the statute because the traditional principles of justice upon which the common law is founded should be perpetuated." (Internal quotation marks omitted.) *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715, 735 A.2d 306 (1999).

The language of § 52-225f contains no clear expression of legislative intent to alter the common law. There is, for example, no provision in the statute that addresses the impact of antiassignment provisions on the transfer of structured settlement rights. Nor does the statute grant the trial court the power to ignore antiassignment provisions, or the common law of contracts, if the court deems it appropriate or necessary. Rather, the statute requires the trial court to consider "whether the transfer of such structured settlement payment rights is in the best interests of the payee and is fair and reasonable to all interested parties under all of the circumstances then existing" and further provides, "[i]f the court determines, after hearing, that such transfer should be allowed, it shall approve such transfer upon such terms and conditions as it deems appropriate." General Statutes § 52-225f (c) (1). Reading that language as a clear and plain expression of the legislature's desire to alter the common law of contracts would be an unwarranted departure from our traditional practice of presuming that "the legislature is capable of providing explicit limitations when that is its intent." *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 290, 627 A.2d 1288 (1993). In the absence of such explicit language, we adhere to our long-standing rule that "[n]o statute is to be construed as altering the common law, farther than its words import [and a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal

quotation marks omitted.) *Gore* v. *People's Savings Bank*, 235 Conn. 360, 382, 665 A.2d 1341 (1995).[8]

## II

The primary issue raised by this case is whether, under Connecticut common law, an antiassignment provision in an annuity contract invalidates the plaintiff payee's transfer of his right to future payments under the annuity to a third party. We conclude, in accordance with case law and § 322 of the Restatement (Second) of Contracts, that the antiassignment provision at issue here does not render the assignment of the annuity ineffective, but, instead, gives the annuity issuer, Safeco, the right to recover damages for breach of the antiassignment provision.

Although we previously have addressed the issue of the validity of contractual provisions prohibiting the assignment of contractual rights; see *Lewin & Sons, Inc.* v. *Herman*, 143 Conn. 146, 149, 120 A.2d 423 (1956) (upholding validity of contractual provision that prohibited assignment without consent); the law of contracts has changed considerably since our earlier decision. Accordingly, we now reexamine the basic legal principles regarding contractual antiassignment provisions.

Our analysis of the effect of the antiassignment provision begins by emphasizing that the modern approach to contracts rejects traditional common-law restrictions on the alienability of contract rights in favor of free assignability of contracts. See 3 Restatement (Second), Contracts § 317, p. 15 (1981) ("[a] contractual right can be assigned"); J. Murray, Jr., Contracts (3d Ed. 1990)

[8] In their brief, the plaintiffs argue that, rather than implicating the presumption against statutory abrogation of common-law rights, this case is simply one of statutory interpretation. Inasmuch as this contention is based entirely on the plaintiffs' claim that antiassignment provisions are invalid under the common law of Connecticut—a claim which we reject in part II of this opinion—the plaintiffs' argument is without merit.

("the modern view is that contract rights should be freely assignable"); 3 E. Farnsworth, Contracts (2d Ed. 1998) § 11.2, p. 61 ("[t]oday most contract rights are freely transferable"). Common-law restrictions on assignment were abandoned when courts recognized the necessity of permitting the transfer of contract rights. "The force[s] of human convenience and business practice [were] too strong for the common-law doctrine that [intangible contract rights] are not assignable." (Internal quotation marks omitted.) J. Murray, Jr., supra, § 135, p. 791. "If the law were otherwise, our modern credit economy could not exist." 3 E. Farnsworth, supra, § 11.2, p. 61. As a result, an assignor typically can transfer his contractual right to receive future payments to an assignee. See *Western United Life Assurance Co.* v. *Hayden*, 64 F.3d 833, 841 (3d Cir. 1995); 3 E. Farnsworth, supra, § 11.2, pp. 61, 66.

The parties to a contract can include express language to limit assignment and courts generally uphold these contractual antiassignment clauses. See 3 Restatement (Second), supra, § 317, p. 15 ("[a] contractual right can be assigned unless . . . assignment is validly precluded by contract"); 3 E. Farnsworth, supra, § 11.4, pp. 82 ("most courts have upheld [terms prohibiting assignment] as precluding effective assignment"). Given the importance of free assignability, however, antiassignment clauses are construed narrowly whenever possible. See 3 E. Farnsworth, supra, § 11.4, pp. 82–83.

In interpreting antiassignment clauses, the majority of jurisdictions now distinguish between the assignor's "right" to assign and the "power" to assign (modern approach). For example, in *Bel-Ray Co.* v. *Chemrite (Pty.) Ltd.*, 181 F.3d 435, 442 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit recognized that numerous jurisdictions followed the general rule "that contractual provisions limiting or prohibiting

assignments operate only to limit [the] parties' *right* to assign the contract, but not their *power* to do so, unless the parties manifest an intent to the contrary with specificity." (Emphasis added.) The court concluded, however, that the "assignment clauses [did] not contain the requisite clear language to limit [the] 'power' to assign" and, therefore, held the assignment valid and enforceable. Id., 443. The court acknowledged that contracting parties could limit the *power* to assign by including an "assignment provision [that] generally state[s] that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." Id., 442. Without such express contractual language, however, "the provision limiting or prohibiting assignments will be interpreted merely as a covenant not to assign . . . . Breach of such a covenant may render the assigning party liable in damages to the non-assigning party. The assignment, however, remains valid and enforceable against both the assignor and the assignee." Id.

Many other courts similarly have held that an antiassignment provision that limits the *right* to assign does not void an assignment between an assignor and assignee unless there is also an express provision limiting the *power* to assign or a provision voiding the assignment itself. See, e.g., *Pravin Banker Associates, Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (" '[t]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way' "); *Cedar Point Apartments, Ltd.* v. *Cedar Point Investment Corp.*, 693 F.2d 748, 754 (8th Cir. 1982) (concluding that "[m]erely the 'right to assign,' not the power to assign, [was] limited by the

express language of the [antiassignment] clause. No intent is thereby revealed to avoid an assignment not meeting the restrictions."); *Liberty Life Assurance Co. of Boston* v. *Stone Street Capital, Inc.*, 93 F. Sup. 2d 630, 637 (D. Md. 2000) ("the Court can think of no clearer way to communicate an intent to deny a party the power to assign than to expressly say so"); *Wonsey* v. *Life Ins. Co. of North America*, 32 F. Sup. 2d 939, 943 (E.D. Mich. 1998) (refusing to "[disregard] the modern trend of upholding assignments in the face of contractual anti-assignment clauses"); *Pro Cardiaco Pronto Socorro Cardiologica, S.A.* v. *Trussell*, 863 F. Sup. 135, 138 (S.D.N.Y. 1994) ("assignments are enforceable unless expressly made void"); *Lomas Mortgage U.S.A., Inc.* v. *W.E. O'Neil Construction Co.*, 812 F. Sup. 841, 844 (N.D. Ill. 1993) (concluding that antiassignment clauses "do not specifically render void an attempted assignment" but "merely restrict the right to assign"); *Paccom Leasing Corp.* v. *E.I. du Pont de Nemours & Co.*, Docket Nos. CIV. A. 89-255-CMW, 90-311-CMW, 1991 U.S. Dist. WL 226775, p. *7 (D. Del. October 30, 1991) ("[t]here is ample support for [the] position that distinguishes between the power to assign and the right to assign. If the power to assign is removed by contract [rendering any attempted assignment void] then the attempted assignment would be ineffective . . . . On the other hand, if the contract . . . merely removed the right to assign, then the assignments . . . would be upheld."); *Jacquette* v. *CNA Ins. Cos.*, Civil Action No. 98-1601 (N.H.P.) (D.N.J. November 16, 1998) ("a contractual prohibition against assignment cannot render an assignment void unless the contract explicitly states that assignments are void or invalid or otherwise ineffective"); *Hanigan* v. *Wheeler*, 19 Ariz. App. 49, 52, 504 P.2d 972 (1972) ("Where a contract contains a *promise* to refrain from assigning, an assignment which violates it would not be ineffective. The promise creates

a duty in the promisor not to assign. It does not deprive the assignor of the *power* to assign . . . ." [Emphasis in original; internal quotation marks omitted.]); *In re Freeman*, Docket No. 98-9384-3P7 (Fla. Bankr. March 29, 1999) ("the anti-assignment provision must eliminate both Debtor's 'power' to assign as well as his 'right' to assign the contract or rights before this Court will invalidate the assignment"); *Garden State Buildings, L.P.* v. *First Fidelity Bank, N.A.*, 305 N.J. Super. 510, 522, 702 A.2d 1315 (1997) (" '[t]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, such clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way' "); *First England Funding, LLC* v. *Travelers Indemnity Co.*, Docket No. BER-L-5608-99 (N.J. Super. August 20, 1999) ("[t]he court further concludes that if the parties had wished to make any assignment void, that any clause purporting to invalidate assignments must contain language that it would be void or invalid if not made in a certain specified way"); *University Mews Associates* v. *Jeanmarie*, 122 Misc. 2d 434, 440, 471 N.Y.S.2d 457 (1984) ("[f]or a contractual clause forbidding or restricting an assignment of rights thereunder to reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, such clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way"); *Reuben H. Donnelley Corp.* v. *McKinnon*, 688 S.W.2d 612, 615 (Tex. App. 1985) ("because the contract term only forbids assignment . . . it does not render an assignment ineffective"); see also 3 E. Farnsworth, supra, § 11.4, pp. 82–83 ("such anti-assignment clauses . . . are often read as imposing a duty on the assignor not to assign, but are not read as making an assignment invalid"); J. Murray, Jr.,

supra, § 138, p. 807 ("The contract may contain a promise by one or both parties to refrain from assigning. . . . The promise creates a duty in the promisor not to assign. It does not deprive the assignor of the *power* to assign and its breach, therefore, would simply subject the promisor to an action for damages while the assignment would be effective." [Emphasis in original.]). Thus, the modern approach finds support in the majority of jurisdictions.[9]

The modern approach, however, is not adopted by some courts, which uphold antiassignment clauses regardless of whether the parties have included contractual language that expressly limits the power to assign or expressly invalidates the assignment itself. We agree with these courts that contracting parties can exercise their freedom to contract to overcome free alienability when they include the appropriate contractual language. See *Parrish Chiropractic Centers, P.C.* v. *Pro-*

---

[9] A number of courts that have considered structured settlement agreements have enforced antiassignment provisions that explicitly deprive the assignor of the *power* to assign or otherwise provide that any assignment will be invalid. See, e.g., *Liberty Life Assurance Co. of Boston* v. *Stone Street Capital, Inc.*, supra, 93 F. Sup. 2d 638 (holding that "the anti-assignment clause is a valid and enforceable term of the Settlement Agreement, and that [the] plaintiffs intended the clause to deny [the assignor] *the power* to assign" [emphasis added]); *Grieve* v. *General American Life Ins. Co.*, 58 F. Sup. 2d 319, 321 (D. Vt. 1999) (upholding antiassignment provision that provided "nor shall [the plaintiff] . . . have the *power* to sell . . . or anticipate the periodic payments, or any part thereof, by assignment or otherwise" [emphasis added; internal quotation marks omitted]); *Johnson* v. *First Colony Life Ins. Co.*, 26 F. Sup. 2d 1227 (C.D. Cal. 1998) (upholding an antiassignment provision that provided "nor shall [the plaintiffs] have *the power* to sell . . . or anticipate the same or any part thereof by assignment or otherwise" [emphasis added; internal quotation marks omitted]). *Henderson* v. *Roadway Express*, 308 Ill. App. 3d 546, 720 N.E.2d 1108, 1110 (1999) (enforcing antiassignment clause that "specifically states [that the assignor] lacked *the power* to sell or anticipate his periodic payments, 'by assignment or otherwise' " [emphasis added]). The dissent relies on these cases. We view them, however, as consistent with the modern approach because each of the provisions in question explicitly deprived the assignor of the *power* to assign.

*gressive Casualty Ins. Co.*, 874 P.2d 1049, 1054–55 (Colo. 1994) ("The policy supporting free alienability is not such an absolute one that it must override a contract provision prohibiting assignment in a specific context. . . . To hold otherwise would be to force [the obligor] to deal with parties with whom it has not contracted, regardless of . . . express contractual provision . . . ." [Citations omitted; internal quotation marks omitted]); *Portland Electric & Plumbing Co.* v. *Vancouver*, 29 Wash. App. 292, 295, 627 P.2d 1350 (1981) ("The primary purpose of clauses prohibiting the assignment of contract rights without a contracting party's permission is to protect him in selecting the persons with whom he deals. . . . When a contract prohibits assignment in 'very specific' and 'unmistakable terms' the assignment will be void against the obligor." [Citation omitted.]). We disagree, however, with these courts that the antiassignment provisions in these cases contained the necessary contractual language. See *Parrish Chiropractic Centers, P.C.* v. *Progressive Casualty Ins. Co.*, supra, 1051 (enforcing an antiassignment provision in insurance policy that stated "[i]nterest in this policy may not be assigned without *our* written consent" [emphasis in original]); *Cloughly* v. *NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App. 1989) (prohibiting assignment when annuity agreement provided that "[s]eller . . . shall not have the right to make any assignment . . . under this [a]greement without the prior written consent of the [p]urchaser"); *Portland Electric & Plumbing Co.* v. *Vancouver*, supra, 294 (prohibiting assignment when contract stipulated that "[t]he [c]ontractor shall not assign this contract or any part thereof . . . without the written prior approval of the [o]wner"). These courts ignore the rule adopted by the majority of jurisdictions, which requires that in order to invalidate the assignment, the parties must include in their antiassignment provision language that specifi-

cally limits the *power* to assign or invalidates the assignment itself.

The modern approach offers the advantage of free assignability together with full protection for any obligor who actually suffers damages as a result of an assignment. An assignor who breaches a contractual provision limiting his or her right to assign will be liable for any damages that result from that assignment. See, e.g., *Bel-Ray Co.* v. *Chemrite (Pty.) Ltd.*, supra, 181 F.3d 442 ("the provision limiting or prohibiting assignments will be interpreted merely as a covenant not to assign . . . . Breach of such a covenant may render the assigning party liable in damages to the non-assigning party. The assignment, however, remains valid and enforceable . . . ."); *Cedar Point Apartments, Ltd.* v. *Cedar Point Investment Corp.*, supra, 693 F.2d 754 n.4 (breach of promise to refrain from assigning or to assign under certain conditions does not render assignment ineffective but may provide remedy for damages if breach was material); *International Telecommunications Exchange Corp.* v. *MCI Telecommunications Corp.*, 892 F. Sup. 1520, 1533 (N.D. Ga. 1995) (" 'a breach of covenant not to assign creates a right in the contract-obligee to recover against the obligor-assignor any damage suffered by reason of the assignment, but it does not affect the transfer of contract rights to the assignee' "); *Pro Cardiaco Pronto Socorro Cardiologica, S.A.* v. *Trussell*, supra, 863 F. Sup. 137 ("[a]n assignment made in violation of a personal covenant prohibiting assignments is enforceable, although it does give rise to a damages action against the assignor"); *Lomas Mortgage U.S.A., Inc.* v. *W.E. O'Neil Construction Co.*, supra, 812 F. Sup. 844 (finding that contractual clause "merely restricts the right to assign" and provides obligor "with a right to damages for breach of the portion of the contract forbidding assignment"); *Paccom Leasing Corp.* v. *E.I. du Pont de Nemours &*

*Co.*, supra, 1991 U.S. Dist. WL 226775, p. *7 ("if the contract . . . merely removed the right to assign . . . a duty was imposed on the promisor . . . not to assign and a breach of that duty would give rise to a cause of action, but the assignment would remain effective"); *Jacquette* v. *CNA Ins. Cos.*, supra, Civil Action No. 98-1601 (NHP) (discussing that while obligor may have right to damages for breach of antiassignment provision, assignment must expressly state that it is void or invalid); *Hanigan* v. *Wheeler*, supra, 19 Ariz. App. 52 ("[w]here a contract contains a *promise* to refrain from assigning . . . its breach . . . would simply subject the promisor to an action for damages while the assignment would be effective" [emphasis in original; internal quotation marks omitted.]); *Randol* v. *Tatum*, 98 Cal. 390, 397, 33 P. 433 (1893) (holding that assignment in violation of covenant not to assign is not void but provides remedy for breach of covenant); *Garden State Buildings, L.P.* v. *First Fidelity Bank, N.A.*, supra, 305 N.J. Super. 522 (" '[a contractual] clause must contain express provisions that any assignment shall be void or invalid' . . . [o]therwise, the assignment is effective, and the obligor merely has the right to damages"); *Allhusen* v. *Caristo Construction Corp.*, 303 N.Y. 446, 450, 103 N.E.2d 891 (1952) (recognizing that when assignment valid despite antiassignment clause obligor has claim for damage for breach); *Macklowe* v. *42nd Street Development Corp.*, 170 App. Div. 2d 388, 389, 566 N.Y.S.2d 606 (1991) ("where the language employed constitutes merely a personal covenant against assignments, an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the covenant"); *Sullivan* v. *International Fidelity Ins. Co.*, 96 App. Div. 2d 555, 556, 465 N.Y.S.2d 235 (1983) ("an assignment made in violation of such covenant gives rise only to a claim for damages against the assignor for violation of the

covenant"); *University Mews Associates* v. *Jeanmarie,* supra, 122 Misc. 2d 440 (holding that contractual clause "must specifically eliminate the power as well as the right to assign the contract . . . otherwise the original obligor is given only the right to damages for its breach, but does not render the assignment ineffective"); *Reuben H. Donnelley Corp.* v. *McKinnon,* supra, 688 S.W.2d 614–15 (recognizing that obligor has right to damages for breach of contract term forbidding assignment but does not render assignment ineffective); see also J. Murray, Jr., supra, § 138, p. 807. Thus, courts in numerous jurisdictions have recognized the evenhandedness of the modern approach.[10]

This approach is also adopted in the Restatement (Second) of Contracts. Section 322 (2) (b) of the Restatement (Second), supra, provides that the general rule is "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested . . . (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective . . . ." See, e.g., *Bel-Ray Co.* v. *Chemrite (Pty.) Ltd.,* supra, 181 F.3d 442; *U.S. Industries, Inc.* v. *Touche Ross & Co.,* 854 F.2d 1223, 1233 (10th Cir. 1988); *Cedar Point Apartments, Ltd.* v. *Cedar Point Investment Corp.,* supra, 693 F.2d 754; *Liberty Life Assurance Co. of Boston* v. *Stone Street Capital, Inc.,* supra, 93 F. Sup. 2d 637; *Wonsey* v. *Life Ins. Co. of North America,* supra, 32 F. Sup. 2d 943; *Lomas Mortgage U.S.A., Inc.* v. *W.E. O'Neil Construction Co.,* supra, 812 F. Sup. 843–44; *Jacquette* v. *CNA Ins. Cos.,* supra, Civil Action No. 98-1601; *Garden State Buildings, L.P.* v. *First Fidelity Bank, N.A.,*

---

[10] The dissent suggests that it is principally the courts of New York and New Jersey that employ the modern approach to antiassignment provisions. A review of the cases on which we rely, however, demonstrates that many courts other than New York and New Jersey have used this approach. In fact, the majority of jurisdictions have adopted the modern approach.

supra, 305 N.J. Super. 521; *First England Funding, LLC* v. *Travelers Indemnity Co.*, supra, Docket No. BER-L-5608-99; *University Mews Associates* v. *Jeanmarie*, supra, 122 Misc. 2d 440; *Reuben H. Donnelley Corp.* v. *McKinnon*, supra, 688 S.W.2d 615.

In the present case, the annuity contract provided that "[n]o payment under this annuity contract may be . . . assigned" by the plaintiff. This antiassignment provision limited the plaintiff's *right* to assign, but not his *power* to do so. The provision did not contain any express language to limit the power to assign or to void the assignment itself. Therefore, in accordance with the modern approach, we conclude that the plaintiff's assignment to Wentworth is valid and enforceable despite the plaintiff's breach of the contract's antiassignment provision. We further conclude, however, that Safeco is free to sue for any damages that it might sustain as a result of the assignment by bringing an action for breach of contract against the plaintiff as assignor. See, e.g., *Bel-Ray Co.* v. *Chemrite (Pty.) Ltd.*, supra, 181 F.3d 442; *Pro Cardiaco Pronto Socorro Cardiologica, S.A.* v. *Trussell*, supra, 863 F. Sup. 137–38; *Macklowe* v. *42nd Street Development Corp.*, supra, 170 App. Div. 2d 389; *Sullivan* v. *International Fidelity Ins. Co.*, supra, 96 App. Div. 2d 556. Alternatively, Safeco may pursue damages from Wentworth, who, as the assignee, " 'stands in the shoes of the assignor.' " 3 E. Farnsworth, supra, § 11.8, p. 105; see id., 105–107; 3 S. Williston, Contracts (3d Ed. 1960) § 404, p. 5, and § 432, pp. 181–83. Safeco, therefore, is fully protected against any actual damages that it might sustain as a result of the plaintiff's breach of the antiassignment provision.[11]

---

[11] At the trial court hearing, Safeco did not show any actual damages resulting from the assignment. It argues, however, that upholding the assignment increases the risk of losing certain purported favorable federal tax treatment afforded to both the insurance company and the annuitant. More specifically, an insurer can fund its liability under a structured settlement agreement by purchasing an annuity that grows tax free while the annuitant receives tax free payments from that annuity. Safeco argues that allowing

The modern approach thus serves the dual objectives of free assignability of contracts together with full compensation for any actual damages that might result from an assignment made in breach of an antiassignment provision.

The judgment is affirmed.

In this opinion BORDEN and PALMER, Js., concurred.

NORCOTT, J., with whom KATZ, J., joins, dissenting. I agree with the majority's conclusion that General Statutes § 52-225f does not act to invalidate antiassignment provisions as a general matter. I disagree, however, with the majority's determination that our common law, and § 322 of the Restatement (Second) of Contracts, give the plaintiff, Marco Rumbin, the freedom to ignore a validly executed, and freely made, antiassignment provision in order to transfer his right to payment under the structured settlement agreement. I therefore respectfully dissent.

I

I take no issue with the well settled precept of modern contract law that a "contractual right can be assigned unless . . . the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or . . . assignment is validly precluded by contract." 3

a party to assign his rights to payments frustrates the public policy of ensuring a steady source of income to that party and creates a risk that the favorable tax treatment will be lost. We agree with the trial court's findings that "[Safeco] . . . has not offered evidence of danger of suffering adverse tax effects as a result of the transfer nor is there other evidence of any detriment to it by virtue of the transfer." Although Safeco has raised the specter of a risk of losing its favorable tax treatment, it has not provided any evidence that there will be an actual adverse effect if this court were to uphold the assignment.

Restatement (Second), Contracts § 317 (1981).[1] Without this rule, which replaced the anachronistic common-law prohibition against the assignment of choses in action, "our modern credit economy could not exist." 3 E. Farnsworth, Contracts (1990) § 11.2, p. 61. Certainly, the majority is correct when it notes that "courts [have] recognized the necessity of permitting the transfer of contract rights. . . . As a result, an assignor typically can transfer his contractual right to receive future payments to an assignee." (Citations omitted; internal quotation marks omitted.)

That said, the majority chooses to ignore a concept that is just as central to this court's jurisprudence, namely, a healthy respect for the power of independent persons to bargain for, or away, contractual provisions in the course of making a contract. This court repeatedly has emphasized that, absent fraud, duress, unconscionability, or other similar infirmity, courts are not in the business of remaking contracts to suit the changing whims of the contracting parties. See, e.g., *Robert Law-*

---

[1] See, e.g., *Settlement Funding, LLC* v. *Jamestown Life Ins. Co.*, 78 F. Sup. 2d 1349, 1355–56 (N.D. Ga. 1999) ("assignment of contract rights is allowed unless prohibited"); *Grieve* v. *General American Life Ins. Co.*, 58 F. Sup. 2d 319, 322 (D. Vt. 1999) (same); *Johnson* v. *First Colony Life Ins. Co.*, 26 F. Sup. 2d 1227, 1229 (C.D. Cal. 1998) (same); *Parrish Chiropractic Centers, P.C.* v. *Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1052 (Colo. 1994) (same); *Peterson* v. *District of Columbia Lottery*, 673 A.2d 664, 667 (D.C. App. 1996) (same); *New Holland, Inc.* v. *Trunk*, 579 So. 2d 215, 217 (Fla. App. 1991) (same); *Goldberg Realty Group* v. *Weinstein*, 669 A.2d 187, 191 (Me. 1996) (same); *American Employers' Ins. Co.* v. *Medford*, 38 Mass. App. 18, 22, 644 N.E.2d 241 (1995) (same); *Vetter* v. *Security Continental Ins. Co.*, 567 N.W.2d 516, 521 (Minn. 1997) (same); *Great Southern National Bank* v. *McCullough Environmental Services, Inc.*, 595 So. 2d 1282, 1287 (Miss. 1992) (same); *Special Products Mfg., Inc.* v. *Douglass*, 159 A.D.2d 847, 849, 553 N.Y.S.2d 506 (1990) (same); *Kraft Foodservice, Inc.* v. *Hardee*, 340 N.C. 344, 347, 457 S.E.2d 596 (1995) (same); *Winegar* v. *Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991) (same); *Berschauer/Phillips Construction Co.* v. *Seattle School District No. 1*, 124 Wash. 2d 816, 829, 881 P.2d 986 (1994) (same); see also 3 E. Farnsworth, Contracts (1990) § 11.2, p. 61 ("[t]oday most contract rights are freely transferable").

*rence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 21–22, 420 A.2d 1142 (1979) ("whether provident or improvident . . . contracts voluntarily and fairly made should be held valid and [be] enforced in the courts"). As this court recently stated, "[e]ven if the result of the fair and logical enforcement of unambiguous agreements seems unduly to burden one of the parties, we decline to embark a voyage into uncharted waters in which untrammeled and unrestrained judicial revisionism would depart significantly from an aspect of contract law upon which contracting parties reasonably can be assumed to have relied for many years." *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 506, 746 A.2d 1277 (2000). Therefore, in spite of the aforementioned importance of contractual alienability, this court has a responsibility not to render unrecognizable the basic rules of contract law.

Bearing those competing concerns in mind, the general rule governing antiassignment provisions is that "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested . . . gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective . . . ." 3 Restatement (Second), supra, § 322. The crucial phrase in that rule—"unless a different intention is manifested"—is one that this court never has interpreted. The generally accepted view, however, is that this phrase encompasses a dichotomy between the *right* to assign, and the *power* to assign, and that only an antiassignment provision that restricts the latter will render any assignment made in spite of that provision invalid.

The dichotomy between the right to assign and the power to assign, which is the starting point of the majority's analysis, is one with which I do not disagree. The fundamental source of my dissatisfaction with the

majority's reasoning is the standard that the majority opinion announces for judging whether an antiassignment provision restricts the right to assign or the power to assign. In my mind, that standard imposes on contracting parties an illogical and arbitrary set contractual mantra that must be recited in order to draft a valid antiassignment clause.

As the majority notes, several courts, most notably those of New Jersey and New York, have adopted precise linguistic requirements relating to the manifestation of the intent necessary to render an assignment of rights ineffective. Those courts have held that " '[t]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, such clause *must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way.*' " (Emphasis added.) *Garden State Buildings, L.P.* v. *First Fidelity Bank, N.A.*, 305 N.J. Super. 510, 522, 702 A.2d 1315 (1997); accord *Bel-Ray Co.* v. *Chemrite (Pty.) Ltd.*, 181 F.3d 435, 442 (3rd Cir. 1999) (interpreting New Jersey law); *Pravin Banker Associates, Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (New York law); *Cedar Point Apartments, Ltd.* v. *Cedar Point Investment Corp.*, 693 F.2d 748, 754 (8th Cir. 1982) (Missouri law); *Pro Cardiaco Pronto Socorro Cardiologica, S.A.* v. *Trussell*, 863 F. Sup. 135, 137 (S.D.N.Y. 1994) (New York law); *Lomas Mortgage U.S.A., Inc.* v. *W.E. O'Neil Construction Co.*, 812 F. Sup. 841, 843–44 (N.D. Ill. 1993) (Illinois law); *Allhusen* v. *Caristo Construction Corp.*, 303 N.Y. 446, 450–51, 103 N.E.2d 891 (1952) (New York law).

The rationale adopted by these courts is "that contractual provisions limiting or prohibiting assignments operate only to limit a [party's] right to assign the contract, but not [its] power to do so, unless the parties manifest an intent to the contrary with specificity." *Bel-*

*Ray Co.* v. *Chemrite (Pty.) Ltd.*, supra, 181 F.3d 442. In order to manifest that specific intent, "the assignment provision must generally state that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment." Id. Greatly favoring the free assignability of contractual rights, these courts have adopted the previously mentioned bright-line test for antiassignment clauses.

A number of jurisdictions that have considered the issue, however, have not been so insistent on the use of particular phraseology. Those courts simply have examined whether the prohibitive language employed by the parties was clear and unambiguous, and upheld the antiassignment clause when such language was used. See, e.g., *Grieve* v. *General American Life Ins. Co.*, 58 F. Sup. 2d 319, 324 (D. Vt. 1999) (antiassignment provisions were "unambiguous, bargained-for contract terms"); *Parrish Chiropractic Centers, P.C.* v. *Progressive Casualty Ins. Co.*, 874 P.2d 1049, 1052 (Colo. 1994) (requiring antiassignment clause to "specifically [prohibit] the assignment of rights"); *Antal's Restaurant* v. *Lumbermen's Mutual Casualty Co.*, 680 A.2d 1386, 1388 (D.C. App. 1996) ("courts generally 'will honor an antiassignment clause in contracts when it contains clear, unambiguous language'"); *Peterson* v. *District of Columbia Lottery*, 673 A.2d 664, 667 (D.C. App. 1996) (same); *Henderson* v. *Roadway Express*, 308 Ill. App. 3d 546, 720 N.E.2d 1108, 1110 (1999) ("the plain language . . . clearly indicates the parties intended to forbid [the assignment of rights]"); *Cloughly* v. *NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 655 (Tex. App. 1989) ("where a contract expressly states that a right to payment arising under it is non-assignable, full force and effect must be given to this provision"); *Portland Electric & Plumbing Co.* v. *Vancouver*, 29 Wash. App. 292, 295, 627 P.2d 1350 (1981) ("[w]hen a contract prohibits

assignment in 'very specific' and 'unmistakable terms'
the assignment will be void against the obligor").[2]

In many of those cases the antiassignment language
approved of bears little resemblance to the precise
requirements set forth in the New Jersey and New York
cases. For example, in *Portland Electric & Plumbing
Co.* v. *Vancouver*, supra, 29 Wash. App. 294, the contract
merely stated that "[t]he Contractor shall not assign
this contract or any part thereof, or any moneys due
or to become due thereunder . . . ." Yet, the Court of
Appeals of Washington held that "[t]he language in the
subject contract is sufficient to prohibit any effective
assignment of monies due . . . ." Id., 295. A similar
conclusion was reached by the Supreme Court of Colo-
rado as to a contract that prohibited only the assignment
"of any interest" in the contract. *Parrish Chiropractic
Centers, P.C.* v. *Progressive Casualty Ins. Co.*, supra,
874 P.2d 1051. The court upheld that provision as pre-
venting any effective assignment because "[w]hen a
contractual provision is clear and unambiguous, courts
should neither rewrite it nor limit its effect by a strained
construction." Id., 1055; see also *Cloughly* v. *NBC Bank-
Seguin, N.A.*, supra, 773 S.W.2d 655 (Texas Court of
Appeals upheld validity of clause that provided " '[the
plaintiff] shall not have the right to make any assign-
ment or transfer any rights under this [a]greement' ").

Most significantly, in three recent cases, courts have
upheld antiassignment provisions in structured settle-

[2] Similarly, a number of courts, although not expressly setting out a test
for the validity of antiassignment provisions, nevertheless have upheld such
provisions as a general matter. See, e.g., *Larese* v. *Creamland Dairies, Inc.*,
767 F.2d 716, 718 (10th Cir. 1985) (antiassignment clauses valid, bargained
for provisions); *Cheney* v. *Jemmett*, 107 Idaho 829, 832, 693 P.2d 1031 (1984)
("[p]rovisions in bilateral contracts which forbid or restrict assignment . . .
without the consent of the obligor have generally been upheld as valid and
enforceable"); *Augusta Medical Complex* v. *Blue Cross of Kansas*, 230 Kan.
361, 367, 634 P.2d 1123 (1981) (assignment barred where contract expressly
prohibits); *Wilkie* v. *Becker*, 268 Minn. 262, 267, 128 N.W.2d 704 (1964)
(same); *Forsythe* v. *Elkins*, 216 Mont. 108, 114, 700 P.2d 596 (1985) (same).

ment agreements in spite of the fact that the provisions did not contain the words "void" or "invalid." See *Grieve* v. *General American Life Ins. Co.*, supra, 58 F. Sup. 2d 321 (provision stating "nor shall [the plaintiff] or any Payee have the power to sell, mortgage, encumber, or anticipate the periodic payments" valid to prevent assignment); *Johnson* v. *First Colony Life Ins. Co.*, 26 F. Sup. 2d 1227 (C.D. Cal. 1998) (provision stating that "[the plaintiff shall not] have the power to sell or mortgage or encumber [any periodic payments]" prohibited assignment); *Henderson* v. *Roadway Express*, supra, 720 N.E.2d 1109 (provision stating that " '[the] [p]laintiff [shall not] have the power to sell, mortgage, encumber, or anticipate the Periodic Payments' " valid to prevent assignment).[3] In all three of these cases, the courts' main concern was the possible precedential effect of a decision "[lending the court's] approval to the voiding of unambiguous, bargained-for contract terms . . . ." *Grieve* v. *General American Life Ins. Co.*, supra, 324.[4]

Although the majority acknowledges the difference between these two schools of thought, the majority

---

[3] Compare the prohibitive language employed in those three cases with the language in the settlement agreement in *Settlement Funding, LLC* v. *Jamestown Life Ins. Co.*, 78 F. Sup. 2d 1349 (N.D. 1999). In that case, the fact that the settlement agreement denied *only* the injured persons the right to "accelerate, defer, increase or decrease the amount of [the payments]" was held not to prohibit assignment. Id., 1357.

[4] The majority attempts to characterize these three cases as being consistent with the modern approach disfavoring limitations on the assignability of contractual rights. That characterization ignores the fact that all three of the cases uphold the validity of antiassignment clauses that do *not* contain the words "void" or "invalid." It is true, as the majority notes, that the clauses in all three cases make use of the word "power." In my view, however, that choice does not reflect a rigid limitation on the language that contracting parties may employ to prevent the assignment of contractual rights. Rather, it is evidence of those courts' adherence to one of the bedrock principles of contract law, namely, a court's responsibility not to "ignore the parties' clear intentions to incorporate [a] bargained-for provision." *Henderson* v. *Roadway Express*, supra, 720 N.E.2d 1113.

nevertheless decides to impose formulaic restraints on the language that contracting parties may employ to craft an antiassignment clause that limits the power to assign. This holding flies in the face of decades of our jurisprudence.

We long have held that "[t]he intention of the parties to a contract governs the determination of the parties' rights and obligations under the contract. . . . Analysis of the contract focuses on the intention of the parties as derived from the language employed. . . . Where the intention of the parties is clearly and unambiguously set forth, effect must be given to that intent." (Citations omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745–46, 714 A.2d 649 (1998). At the heart of that rule is our understanding that different parties may choose differing language in order to express their intent, but so long as the language employed clearly manifests their joint contractual will, we are bound to enforce the contract's terms.

In my opinion, this principle mandates against following the courts of New Jersey and New York in establishing a concrete formula that contracting parties must follow in order to write a valid antiassignment clause into a contract. Following a majority of the courts that have considered the issue, it would be preferable simply to hold that, so long as the language employed by the parties clearly and unambiguously establishes their intent to prohibit any assignment of rights under the contract, such an antiassignment clause will be valid and enforceable.

## II

In the present case, I would conclude that the language of the antiassignment clauses contained in the

settlement agreement and annuity contract[5] are sufficiently clear and unambiguous to allow them to be enforced.

It is well settled that we interpret contract language in accordance with "a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 91–92, 709 A.2d 540 (1998). "If the terms of [a contract] are clear, their meaning cannot be forced or strained by an unwarranted construction to give them a meaning which the parties obviously never intended. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Citations omitted.) *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494–95, 152 A.2d 316 (1959).

The language employed in the antiassignment clauses at issue in the present case, when accorded its common and natural meaning, clearly and unambiguously prohibits the assignment of periodic payments. The settlement agreement provided in relevant part: "It is understood and agreed that . . . [the plaintiff] may not assign, pledge or sell the consideration to any third party in consideration of the payments made and to be made by [the defendant Utica Mutual Insurance Company]. . . ." The annuity contract provided in relevant

---

[5] The settlement agreement provided in relevant part: "It is understood and agreed that . . . [the plaintiff] may not assign, pledge or sell the consideration to any third party in consideration of the payments made and to be made by [the defendant Utica Mutual Insurance Company]. . . ."

The annuity contract provided in relevant part: "No payment under this annuity contract may be . . . sold, assigned, or encumbered in any manner by the [plaintiff] . . . or any other recipient of the payment. . . ."

part: "No payment under this annuity contract may be . . . sold, assigned, or encumbered in any manner by the [plaintiff] . . . or any other recipient of the payment. . . ." Each of these clauses contains simple, easily understood language that clearly prohibits the assignment of any of the periodic payments.[6]

In an attempt to call into question whether the plaintiff freely entered into these contracts, the majority notes that "[a] review of the annuity contract in the present case reveals that it is a preprinted, standardized insurance contract in which the plaintiff was the named annuitant. It was not a contract arrived at by actual negotiation between the parties." That statement inexplicably ignores the status of the settlement agreement, which most likely *was* the product of negotiation between the plaintiff and the original insurer, and gives short shrift to the fact that the plaintiff *never* has claimed that *either* contract was one of adhesion.

As discussed in part I of this dissent, three courts that recently have considered structured settlement agreements containing similar prohibitive language have held that the language in question prevented assignment. See *Grieve* v. *General American Life Ins. Co.*, supra, 58 F. Sup. 2d 321 ("nor shall [the plaintiff] or any Payee have the power to sell, mortgage, encumber, or anticipate the periodic payments"); *Johnson* v. *First Colony Life Ins. Co.*, supra, 26 F. Sup. 2d 1227 ("[the plaintiff shall not] have the power to sell or mortgage or encumber [any periodic payments]"); *Hender-*

---

[6] Without offering any cogent rationale for so doing, the majority considers only the antiassignment clause contained in the annuity contract. I fail to understand why the plaintiff, who was, after all, a party to the settlement agreement, should not be bound by its terms. The majority ducks this issue with the offhand statement that "the only relevant antiassignment provision in this case is the one in the annuity contract, the only agreement to which [the defendant Safeco Life Insurance Company] is a party." The majority fails to explain, however, why that is the case.

*son* v. *Roadway Express*, supra, 720 N.E.2d 1109 (" 'the [p]laintiff [shall not] have the power to sell, mortgage, encumber, or anticipate the Periodic Payments' ").

In my view, the similarity between the language at issue in the present case, and the language at issue in *Grieve, Johnson* and *Henderson*, militates against the majority's conclusion. Unlike the requirements imposed by the courts of New Jersey and New York, neither the antiassignment clauses in those three cases, nor the clauses at issue in the present case, make use of the words "void" or "invalid." Yet, the language of all of those clauses unmistakably is couched in terms plain and common enough to provide clear guidance as to the parties' intent to prohibit assignment. I conclude, therefore, as did the court in *Henderson*, that "the plain language of the settlement agreement clearly indicates the parties intended to forbid [the plaintiff] from assigning his periodic payments." *Henderson* v. *Roadway Express*, supra, 720 N.E.2d 1110.

This conclusion is buttressed, in the present case, by the language of § 322 (2)(c) of the Restatement (Second) of Contracts, which provides that "[a] contract term prohibiting assignment of rights under the contract . . . *is for the benefit of the obligor*, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition." (Emphasis added.) The Restatement, although cognizant of the need for free transfer of contractual rights, also recognizes, and approves of, the desire of obligors to protect their financial interests. As noted in comment (a) to § 322 of the Restatement, "[a] term in a contract prohibiting assignment of the rights created may resolve doubts as to whether assignment would materially change the obligor's duty . . . or it may serve to protect the obligor against conflicting claims and the hazard of double liability."

Although in the present case the trial court concluded that "[Safeco] . . . has not offered evidence of danger of suffering adverse tax effects as a result of the transfer nor is there other evidence of any detriment to it," that conclusion is irrelevant. As the court in *Henderson* noted, "[m]ore important than whether or not these tax concerns are real or will actually arise is the fact that the parties implemented the antiassignment provisions with these concerns in mind." *Henderson* v. *Roadway Express*, supra, 720 N.E.2d 1113; accord *Johnson* v. *First Colony Life Ins. Co.*, supra, 26 F. Sup. 2d 1229 n.4 ("[i]t appears that [uncertainty over adverse tax consequences] is what defendants wished to eliminate by including the nonassignability clause").

In the present case, Safeco may, or may not, suffer a detrimental change in its tax position as the annuity issuer as a result of the proposed transfer. Even if, however, the anticipated change for the worse never ensues, the antiassignment clauses were included to forestall that possibility. Therefore, unless the clauses are waived by Safeco, they exist as a safeguard against such adverse potential future consequences, and must be enforced.

### III

I am not unmindful of the conflicting jurisprudential interests raised by this case. Nor am I unaware of the straitened financial circumstances that may lead persons to trade future contractual rights for money in the here and now. Nevertheless, while I agree that the free assignability of contractual rights is an objective that this court should attempt to promote, free assignability is not the only, or even the paramount, jurisprudential consideration that necessarily must bear on our decision in the present case. Just as important is the need for this court to announce and adhere to a policy of promoting the evenhanded enforcement of fairly made

and entered-into contracts, even if adherence to this policy causes hardship under a particular set of facts. Certainly, such a policy is preferable to a decision which will "lend [this court's] approval to the voiding of unambiguous, bargained-for contract terms in order to enable [the intervening plaintiff, J. G. Wentworth] to profit . . . from [the plaintiff's] financial distress." *Grieve* v. *General American Life Ins. Co.*, supra, 58 F. Sup. 2d 324.

Accordingly, I dissent.

