136 P.3d 765 (2006)
133 Wash.App. 350
In re RAPID SETTLEMENTS LTD'S APPLICATION FOR APPROVAL OF STRUCTURED SETTLEMENT PAYMENT RIGHTS, and Leslie Hemenway Dean, Annuitant, Respondents,
v.
SYMETRA ASSIGNED BENEFITS SERVICE COMPANY and Symetra Life Insurance Company, Appellants.
In re Rapid Settlements Ltd's Application for Approval of Transfer of Structured Settlement Payment Rights, and Robert W. Hargette, Annuitant, Respondents,
v.
Symetra Assigned Benefits Service Company and Symetra Life Insurance Company, Appellants.
Nos. 55559-6-I, 55619-3-I.
Court of Appeals of Washington, Division 1.
June 5, 2006.
*767 Raymond J. Dearie, Jr., Odgen Murphy Wallace, PLLC, Seattle, for Respondent.
Jeret E. Sale, Deborah Lynn Carstens, Medora Marisseau, Seattle, for Appellant.
Leslie Hemenway Dean, Appearing pro se.
William Carter Dean, Appearing Pro se.
Benjamin Hargette, Appearing Pro Se.
Robert C. Hargette, Appearing Pro Se.
BECKER, J.
¶ 1 In these consolidated cases, North Carolinians Leslie Dean and Robert Hargette were beneficiaries of structured settlements, each separately approved by North Carolina courts. To fund the settlement payments, the liable parties bought annuities from Symetra Life Insurance Company. The settlement agreements and annuity contracts prohibited Dean and Hargette from assigning their rights to payment. Later, Dean and Hargette arranged to give the right to some of their future periodic payments to Rapid Settlements, Ltd., in exchange for present day lump sum payments. As required by Washington law, Rapid notified Symetra and sought court approval over Symetra's objection. In each case, the transfers received approval by a trial court. Symetra appeals. We reverse. The transfers contravened several Washington and North Carolina statutes, and the anti-assignment clauses in the underlying settlement agreements render the transfers ineffective in any event.

Leslie Dean's Structured Settlement and Transfer Agreement
¶ 2 In 1993, the estate of Leslie Dean's mother and Vanliner Insurance settled the estate's claims arising from a 1991 accident that caused the mother's death. Dean was 16 years old at the time of the settlement. The settlement included a schedule of nine payments to Dean, one every three years, beginning in 1994 and ending in 2018. The parties to the settlement agreed that Dean would not have the power of assigning her right to those payments. They also agreed to allow Vanliner to assign its liability to Symetra Assigned Benefits Service Company (a Washington insurance company) and to fund the payments with an annuity from Symetra Life. A North Carolina Superior Court approved the settlement, applying North Carolina law.
¶ 3 In 2004, Dean needed ready cash. She was still living in North Carolina. She agreed to transfer and assign to Rapid all of her rights to a $40,000 payment due from Symetra in 2009. Rapid is a Texas factoring *768 company, i.e., a company that trades in payment rights. Rapid agreed to pay Dean $19,000 for the assignment, contingent on court approval. Rapid filed a disclosure statement. Dean waived her opportunity to seek independent professional advice about the consequences of the transfer. In addition to signing over her right to the 2009 payment, Dean also granted Rapid a power of attorney over the payments, the right of first refusal if someone else offered Dean money for any of the remaining periodic payments, and a limited security interest in all of the remaining periodic payments.

Robert Hargette's Structured Settlement and Transfer Agreement
¶ 4 In 1996, Robert Hargette and North Carolina Interlocal Risk Management Association settled Hargette's claim for worker's compensation benefits arising from a 1989 injury. The settlement included monthly payments of $549 to Hargette for life, with several guaranteed even if Hargette died. To fund the payments, the association was authorized to buy an annuity from Symetra Life, with Hargette to be designated as the measuring life. The settlement and annuity contracts prohibited any assignment by Hargette. Both contracts contained choice of law covenants requiring that the agreements be interpreted under North Carolina law.[1]
¶ 5 Hargette, still living in North Carolina, agreed with Rapid in 2004 to cash in some of his future payments. The agreement was essentially identical to Dean's. He assigned and transferred to Rapid the right to receive 57 of the future monthly payments, totaling $31,293. In exchange, Rapid agreed to pay Hargette a lump sum of $21,355.

Superior Court Approval of Both Transfers
¶ 6 Since 2001, Washington has been one of a number of states with a statute that governs agreements to transfer future structured settlement payment rights in exchange for up front lump sum payments. In 1999, North Carolina enacted a statute that is similar to Washington's, but not identical. Under the Washington Structured Settlement Protection Act, no transfer of structured settlement payment rights is effective until approved by final court order. RCW 19.205.030. The act allows Rapid to apply for approval in the county in which the payee resided or the county in which the structured settlement obligor or annuity issuer maintains its principal place of business. RCW 19.205.050(1). Rapid applied for approval in King County, where Symetra maintains its principal place of business. Rapid notified Symetra of the applications, as required by the act. RCW 19.205.050(2).
¶ 7 Symetra objected to the transfers based on the Washington Structured Settlement Protection Act, the slightly different North Carolina version of that act, the North Carolina worker's compensation statute, and the contractual anti-assignment provisions. Symetra provided declarations to the effect that the transfers would increase its administrative costs and litigation risks. Rejecting Symetra's arguments, the trial courts approved each transfer, entered findings, and ordered Symetra to acknowledge the transfers and deliver the assigned payments to RSL-3B-IL, Ltd., the entity to which Rapid had already assigned its right to receive the payments. The courts discharged Symetra from liability to Dean and Hargette for the payments.
¶ 8 Symetra has appealed the final orders. The two cases have been consolidated on appeal.
¶ 9 The issues raised by Symetra's appeal involve interpretation of statutes and contracts. Our review is de novo. See Fluke Corp. v. Hartford Accident & Indem. Co., 145 Wash.2d 137, 143, 34 P.3d 809 (2001).
¶ 10 The Washington act provides, in relevant part, that no transfer of structured settlement payment rights is effective unless approved in advance by a final court order based on express findings by the court that *769 the transfer does not contravene "any applicable statute" or "the order of any court". RCW 19.205.030(3). The approving courts made these findings.
¶ 11 Symetra contends the findings are legally erroneous. We agree. Because the transfers contravene several applicable statutes, Rapid's applications for court approval should have been rejected.

Disclosure Requirements
¶ 12 Primarily, the transfers contravene the disclosure requirements of the Washington and North Carolina statutes. The Washington act requires the transferee (Rapid in this case) to provide a disclosure statement to the payee. The statement must disclose all of the structured settlement payments to be transferred. RCW 19.205.020(1)-(3). The disclosure statement provided by Rapid to Dean lists the $40,000 payment as the only payment being transferred. The statement provided by Rapid to Hargette lists only the 57 monthly payments. Symetra contends the transfer agreements also "transfer" these payees' right to receive their other periodic payments, and therefore these other payments should also have been listed in the disclosure statements.
¶ 13 The Washington act defines "transfer" to mean "any sale, assignment, pledge, hypothecation or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration." RCW 19.205.010(18) (emphasis added). "Structured settlement payment rights" are defined in these circumstances as "rights to receive periodic payments under a structured settlement". RCW 19.205.010(16).
¶ 14 Symetra contends the standard transfer agreement works a transfer of the other periodic payments because it encumbers them by means of the power of attorney clause, the first refusal clause, and the financing statement clause. The Washington act does not define "encumbrance", but the common meaning of an undefined statutory term can be determined by dictionary definition. See Quadrant Corp. v. Cent. Puget Sound State Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 239, 110 P.3d 1132 (2005). An encumbrance is "a burden that impedes action or renders it difficult". Webster's Third New International Dictionary at 747 (1986).

1. Power of Attorney

¶ 15 The power of attorney provisions in both agreements grant Rapid the right to do "all acts and things" that the payees might do regarding all of the periodic payments, as well as granting to Rapid "any and all rights" the payees have under their original settlement agreements, including the right to "alter, edit and change payment instructions".[2] Rapid may exercise these powers whenever it decides doing so is "necessary or expedient for Rapid Settlements to obtain all of the benefit of the bargain contemplated by this Agreement."
¶ 16 One of Rapid's bargained-for benefits is its right of first refusal. This right arises when the payee (Dean or Hargette) receives an offer to "sell, assign, borrow against, pledge or otherwise encumber any Periodic Payments" and "desires to enter into" such a transaction. In the event the payee breaches Rapid's right of first refusal, the payee also agrees to "direct any other purchaser to directly pay over to Rapid Settlements ten percent of the amount of Periodic Payments" transferred by the payee. Thus, if Rapid deemed it necessary to obtain the benefit of its right of first refusal, Rapid could exercise the right to edit payment instructions, and instruct the annuity issuer to direct all of the future periodic payments to Rapid, instead of the payee. Because the payee would then no longer have any right to receive those periodic payments, the power of attorney provision must be viewed as an encumbrance on those payments. Each periodic payment, therefore, is transferred to Rapid by the agreement, and must be listed in the disclosure statement.
¶ 17 Rapid contends the power of attorney provision is not an encumbrance because it cannot be defined as payment rights or *770 periodic payments under the Washington act. However, the power of attorney provision need not itself fit the definition of structured settlement payment rights. To be considered a transfer, the provision need only encumber a structured settlement payment right.
¶ 18 Rapid further contends the power of attorney provision is not an encumbrance by arguing that the Washington act does not prohibit contract terms in the transfer agreement that "fall outside the minimum requirements" of that act. But the Washington act does require disclosure of terms that fall outside those minimum requirements when those terms encumber payment rights.

2. First Refusal and Financing Statement Provisions

¶ 19 Symetra contends the right of first refusal and financing statement provisions also encumber the payees' rights to receive their other periodic payments. The agreements authorize Rapid to file financing statements over all of the payees' periodic payments to "secure Rapid Settlement's rights hereunder". One right Rapid has under the transfer agreement is, as noted, the right of first refusal. That right includes the right to have the payee direct any purchaser to pay Rapid 10 percent of any amount transferred in violation of Rapid's first refusal right. Because all of the periodic payments secure these rights, a payee's breach of Rapid's right of first refusal could result in Rapid's interference with that payee's right to receive future payments. This is an additional means by which the transfer agreement encumbers all of the periodic payments, and therefore supplies an additional reason why all of the periodic payments must be listed in the disclosure statement.
¶ 20 Rapid argues that the transfer agreement limits the security agreement to the disclosed payments: Dean's $40,000 and Hargette's 57 payments. But the provisions Rapid cites in support of this argument also expressly provide for the filing of financing statements covering "payments due from the Annuity Issuer". This phrase is not limited to the disclosed payments. Each agreement says that the filing is designed "to secure Rapid Settlement's rights hereunder", and the transfer agreement "shall function as a security agreement."[3] We conclude the security agreement encumbers all of the periodic payments due under each payee's original settlement. Again, because all of the payments are encumbered, disclosure is required.
¶ 21 Rapid further argues that the right of first refusal provision does not prevent Dean from attempting a subsequent transfer. But that is not the issue. The issue is whether Rapid has failed to disclose payments that have been encumbered. All of the payments have been encumbered because the payees have granted Rapid the right to use all of the payments as security in protecting its right of first refusal.
¶ 22 Moreover, the right to file financing statements is a hypothecation of the payees' rights to their periodic payments; the payees have pledged those payments as security for Rapid's rights. A hypothecation is also included in the statute's list of things that must be disclosed because they constitute a "transfer". RCW 19.205.010(18).

3. 10 Percent Penalty

¶ 23 Symetra next contends the transfers contravene the statutes because the disclosure statements do not disclose all of the penalties the payees might face. The Washington act requires the disclosure statement to include the "amount of any penalties or liquidated damages payable by the payee in the event of any breach of the transfer agreement by the payee". RCW 19.205.020(7). The disclosure statements here list that amount as $3,500. Symetra contends the payees could be subject to far greater penalties if they violate Rapid's right of first refusal. This provision, as discussed above, permits Rapid to collect 10 percent of any amount transferred in violation of the right of first refusal.
¶ 24 Rapid contends it did not need to include the 10 percent provision in the disclosure statement because that money will be *771 owed only in the event that a future transfer is made in violation of the right of first refusal. But the Washington act requires disclosure of any penalties payable "in the event of any breach of the transfer agreement". The 10 percent provision fits this description, and must be disclosed.
¶ 25 In summary, the provisions for power of attorney, right of first refusal, and the 10 percent penalty encumber each payee's right to all of his or her periodic payments, not just the ones specifically identified for transfer. Because the disclosure statements issued to Dean and Hargette by Rapid do not list the remaining periodic payments, the transfers contravene the disclosure provision in the Washington act.

Effect Before Court Approval
¶ 26 Under the Washington act, a transfer is not effective unless it has been "approved in advance in a final court order". RCW 19.205.030. Symetra contends that, apart from whether the transfers discussed above are included in the disclosure statements, the transfer agreements contravene the Washington act by granting Rapid certain rights before any court approves the transfer agreement. Symetra contends the clearest example of pre-approval transfer is shown by the transfer agreement provision that "regardless of whether such transfer and assignment is consummated", the payees grant Rapid a security interest in the assigned payments. According to Symetra:
even if the transfer is not completed or approved by the court, Rapid is granted a security interest in the payments purported to be assigned under the Transfer Agreement. This violates RCW 19.205.030.
¶ 27 This argument fails. Under the act, a transfer becomes effective only after court approval. Therefore, it is untrue that "Rapid is granted a security interest" in the payments regardless of court approval. Rapid has no valid security interest until the transfer agreements have been approved by a final court order. The opening page of the transfer agreements makes this clear: "This Transfer Agreement is subject to court approval." The challenged language does not contravene the Washington act.

Liability Limitation
¶ 28 Symetra next contends the transfer agreements violate the Washington act by limiting Rapid's liability to Symetra.
¶ 29 The transfer agreements provide:
If and when Rapid Settlements assigns this Agreement and following notice of such, all references to Rapid Settlements in this Agreement shall be read and understood to refer only to Rapid Settlements' assignee and Rapid Settlements shall be, to the extent of such assignment, fully discharged from any liability hereunder.
Rapid pre-assigned the interest it would acquire in the transfers to another corporate entity named RSL-3B-IL, Ltd. Symetra contends the discharge of liability clause contravenes the act's posttransfer liability rule.
¶ 30 The act provides that, after a transfer, the transferee is liable to the obligor and annuity issuer for two types of costs. RCW 19.205.040(2). First, if the transfer violates the terms of the structured settlement, the transferee is liable "for any taxes incurred" by the obligor (here, Symetra) as a result of the transfer. RCW 19.205.040(2)(a). Second, the transferee is liable for "any other liabilities or costs" arising either from compliance by Symetra with the court order, or "as a consequence of the transferee's failure to comply with this chapter". RCW 19.205.040(2)(b).
¶ 31 Even if Rapid misstated its posttransfer liability in the agreementwhich we do not decidethe court below could not reject the transfer on that basis. The approving court must decide whether the "transfer" contravenes an applicable statute. RCW 19.205.030(3). A "transfer" is an alienation or encumbrance of structured settlement payment rights. Rapid's attempted liability limitation is not itself a transfer, and the transfer itself did not violate the posttransfer liability rule in RCW 19.205.040(2)(b). Therefore, the provision in the agreement defining liability could not serve as a basis for finding that the transfer contravenes an applicable statute.

*772 North Carolina Court Order

¶ 32 To approve a transfer of structured settlement payment rights, a court must find that the transfer does not violate the order of any court. RCW 19.205.030(3). With respect to Dean only, Symetra contends the transfer contravenes the 1993 North Carolina court order approving Dean's original structured settlement agreement. The Washington court found there was no violation.
¶ 33 In approving the settlement in 1993, the North Carolina court concluded periodic payments were in Dean's best interest:
Because of the unusual facts and circumstances here, the Court concludes that the periodic payments set out above to each minor child of the deceased, are in the best interest of each minor beneficiary. And in addition to approving the settlement being made by the Executor, the Court further finds that it is in the best interest of each minor beneficiary that her distributive share shall be received by her through structured payments, as set out above, and this portion of the settlement is likewise approved by the Court.
¶ 34 As this order shows, the North Carolina court did not mandate that the schedule for Dean's receipt of payments remain forever unaltered. The court merely ruled that Dean's interest, in 1993, was best served by providing for the periodic payments. At that time, Dean was a teenager. What serves her best interest may have changed in the intervening years, particularly since Symetra does not challenge the trial court's finding that the transfer is in Dean's best interest now. Dean's transfer does not contravene the North Carolina order.

North Carolina Structured Settlement Protection Act
¶ 35 Under the Washington act, a transfer found to "contravene any applicable statute" is ineffective. RCW 19.205.030(3). The Washington act "does not authorize any transfer of structured settlement payment rights in contravention of any law". RCW 19.205.060(5).
¶ 36 Symetra contends the transfers should have been found to contravene portions of the North Carolina act, which is somewhat more restrictive than Washington's. Rapid responds that the transfers need satisfy only the Washington act. According to Rapid, the North Carolina act is not applicable because a provision of the federal tax code has preempted it.
¶ 37 Congress has the power to preempt state law. U.S. Const. Art. VI, cl. 2 ("the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Preemption can occur when a state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress". Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).
¶ 38 Rapid contends the North Carolina law stands as an obstacle to the purposes and objectives Congress had in enacting a specific provision of the tax code, 26 U.S.C. § 5891. This statute imposes "a tax equal to 40 percent of the factoring discount" on companies that acquire structured settlement payment rights in factoring transactions. 26 U.S.C. § 5891(a). The "factoring discount" is defined as the difference between the aggregate amount of the payments being acquired and the amount paid by the acquirer. 26 U.S.C. § 5891(c)(4). There is no tax obligation when the transfer of the payment rights is approved in advance "in a qualified order." 26 U.S.C. § 5891(b)(1). A qualified order must, among other things, be issued under the authority of an "applicable state statute". 26 U.S.C. § 5891(b)(2)(B)(i). A state statute, to be applicable, must require the approving court to take into account "the welfare and support of the payee's dependents". 26 U.S.C. § 5891(b)(2)(A)(ii).
¶ 39 The North Carolina act requires the approving court to take into account the best interest of the payee, but unlike the Washington act it does not explicitly require taking into account the welfare and support of the payee's dependents. Rapid contends that this omission makes the North Carolina act an inapplicable state statute under *773 § 5891. From this premise, Rapid deduces that the North Carolina act stands in the way of § 5891's purpose and is preempted by it.
¶ 40 Section 5891 is not, as Rapid implies, a federal structured settlement protection act. It expresses no Congressional purpose that is blocked when a State enacts a statute that does not conform to § 5891's definition of "applicable state statute." It simply addresses the tax consequences of transfers of structured settlement payment rights. If the North Carolina act is inapplicable as defined by the federal statute, an order issued under that act is not a qualified order. Such an order cannot aid Rapid in avoiding the 40 percent excise tax. We conclude § 5891 does not preempt the North Carolina act.
¶ 41 Rapid also contends that because the North Carolina act is inapplicable under § 5891, subject matter jurisdiction is appropriate in Washington. But Symetra is not challenging the subject matter jurisdiction of the Washington court. Symetra is contending that a Washington court, or any court applying the Washington statute, must ensure that the transfer does not contravene any other "applicable statute." The fact that the North Carolina act may not be an "applicable state statute" under the federal tax code does not prevent it from being an "applicable statute" for purposes of a Washington court's approval of a transfer of structured settlement rights.
¶ 42 Other than preemption and subject matter jurisdiction, Rapid offers no reason why the North Carolina Act is not an "applicable statute" with which the transfer must comply under the Washington act. See RCW 19.205.030. By its own terms, the North Carolina act applies to the transfers in question. It provides that no transfer of structured settlement payment rights shall be effective unless approved in advance by final court order. N.C. Gen.Stat. § 1-543.12 (2003). The act defines structured settlement payment rights as the right to periodic payments where the payee "is domiciled in this State". N.C. Gen.Stat. § 1-543.11(12)(a) (2003). Dean and Hargette are domiciled in North Carolina.
¶ 43 Rapid does not dispute that it has failed several of the North Carolina requirements. For instance, both Dean and Hargette waived their right to independent professional advice. The North Carolina act prohibits such waivers. N.C. Gen.Stat. § 1-543.15(a). Also, the discount rates used to calculate the amounts payable to Dean and Hargette are greater than those allowed under the North Carolina act. See N.C. Gen. Stat. § 1-543.12(6). Rapid does not refute Symetra's contention that Rapid used a 20 percent rate for Hargette and a 16 percent rate for Dean while the maximum allowable rate under the North Carolina act was 9.25 percent. Furthermore, for Hargette, the North Carolina act prohibits transfers of payments that have arisen from claims under the North Carolina Workers' Compensation Act. N.C. Gen.Stat. § 1-543.12.
¶ 44 In short, Rapid has offered no persuasive reason why the North Carolina act is not an applicable statute under the Washington act. Both transfers contravene the North Carolina act and therefore are ineffective under RCW 19.205.030.

North Carolina Worker's Compensation Act
¶ 45 Symetra next contends Hargette's transfer should have been found to contravene the anti-assignment provisions in the North Carolina Worker's Compensation Act. This contention applies to Hargette's transfer only. The act provides: "No claim for compensation under this Article shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors and from taxes." N.C. Gen.Stat. § 97-21. Rapid responds that the act bars assignment of "claims for compensation", not the right to payments achieved by a settlement of such claims.
¶ 46 In the phrase "all compensation and claims therefor", the North Carolina statute distinguishes between claims for compensation and compensation itself. This distinction supports Rapid's argument. Had North Carolina intended to bar assignment of compensation itself, the statute would have been worded differently, for example: "No compensation and no claim for compensation under this Article shall be assignable, and all compensation and claims therefor shall be *774 exempt from all claims of creditors and from taxes."
¶ 47 Symetra responds that under the settlement agreement, Hargette has only "claims for compensation" until he actually receives payment. Symetra relies on three provisions of the settlement agreement for this argument. First, the agreement provides that each annuity payment works as only a partial discharge of the duty to pay Hargette. Second, the agreement provides that Hargette has no legal interest in the future annuity payments themselves. Third, the agreement provides that Hargette has no right to assign the future annuity payments.
¶ 48 Symetra has not cited any authority or otherwise persuasively explained why these circumstances define Hargette's settlement as merely a claim rather than "compensation" itself. We conclude Hargette's transfer did not violate the anti-assignment provision in North Carolina Worker's Compensation Act.

Contractual Anti-Assignment Provisions
¶ 49 As a basis for reversal independent of statutes, Symetra contends various contractual anti-assignment provisions render the transfers ineffective.
¶ 50 The anti-assignment language is located in four agreements, two relating to each payee. Each of these documents also contains a provision that the document will be construed and interpreted according to North Carolina law.
¶ 51 The settlement agreement in Dean's case provides that she will not have the "power" to assign the periodic payments:
[The Payees] acknowledge that the periodic payments cannot be accelerated, deferred, increased or decreased by any of them, nor shall any of them have the power to sell, mortgage, encumber, or anticipate the periodic payments, or any part thereof, by assignment or otherwise.[[4]]
Another agreement between the parties involved in Dean's settlement also contains anti-assignment language: "None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered."[5]
¶ 52 Hargette's settlement agreement provides that neither he nor his successor will have the "right" to accelerate the payments due:
Neither the Claimant, his estate, nor any subsequent beneficiary or recipient of any payments or any part of any payments under this Addendum, shall have the right to accelerate, commute, or otherwise reduce to present value or to a lump sum any of the payments or any part of any payments due under this Addendum.[6]
And the annuity contract in Hargette's case specifically includes anti-assignment language:
No payment under this annuity contract may be accelerated, deferred, increased, or decreased, or anticipated, sold, assigned, or encumbered in any manner by the annuitant (or either joint annuitant) or any other recipient of the payment.[7]
¶ 53 Rapid contends Symetra waived the right to enforce the anti-assignment clauses, as shown by testimony below that Dean and Hargette each successfully transferred a periodic payment on at least one prior occasion. This argument fails, first because Rapid does not cite to any record of the testimony, and second because Rapid does not claim to have been the transferee on those prior occasions.
¶ 54 Rapid next argues that the anti-assignment clauses may be disregarded because they were intended to benefit only the payees, the payees are in favor of the assignment, and the administrative burden on Symetra is insubstantial. As a practical matter, Rapid argues, "it makes no difference to a debtor to whom he pays the debt, only that such payment is properly credited".[8] According to Rapid, the circumstances call for *775 application of a Restatement rule which embodies a general policy favoring the free alienability of contract rights to payment. The Restatement provides:
(1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.
(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,
. . . .
(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective.
Restatement (Second) of Contracts, § 322 (1979). See also comment (b): "If there is no forfeiture, and the obligee joins in demanding payment to the assignee, a contractual prohibition which serves no legitimate interest of the obligor is disregarded." Restatement § 322, cmt. b.
¶ 55 Courts in other jurisdictions have taken differing approaches to anti-assignment clauses in structured settlement agreements. The Supreme Court of Connecticut, in a decision approving a transfer, parsed the language of the anti-assignment clause. If the agreement limits the "power" to assign, then any purported assignment is invalid or "void". But if the agreement merely limits the "right" to assign, then the assignment is valid, and the only remedy for an obligor like Symetra would be an action for damages for breach of contract. Rumbin v. Utica Mut. Ins. Co., 254 Conn. 259, 757 A.2d 526, 529-37 (2000). A federal district court in Michigan, following the Restatement, approved a transfer after concluding that the "necessary administrative tasks associated with the assignment's implementation" were not sufficiently substantial to cause prejudice to the annuity obligor, and the anti-assignment clause was more likely intended to protect the minor plaintiff than to confer a benefit on the obligor. Wonsey v. Life Ins. Co. of North America, 32 F.Supp.2d 939, 943 (E.D.Mich., 1998). A federal district court in Vermont, on the other hand, enforced an anti-assignment clause after concluding that "the change of recipient materially increases a risk" for the obligor. Grieve v. General American Life Ins. Co., 58 F.Supp.2d 319, 323 (D.Vt.1999). And Illinois, while generally looking upon anti-assignment clauses "with disfavor", nevertheless has enforced them in structured settlement agreements after concluding that the provision was a bargained-for agreement intended to benefit all parties. In Re Nitz, 317 Ill.App.3d 119, 250 Ill.Dec. 632, 739 N.E.2d 93, 100 (2000); Henderson v. Roadway Express, 308 Ill.App.3d 546, 242 Ill.Dec. 153, 720 N.E.2d 1108 (1999), appeal denied, 188 Ill.2d 564, 246 Ill.Dec. 123, 729 N.E.2d 496 (2000).
¶ 56 Rapid does not dispute that the agreements in this case are to be construed under the law of North Carolina. Symetra contends that anti-assignment provisions are enforceable in North Carolina, citing Parkersmith Props. v. Johnson, 136 N.C.App. 626, 525 S.E.2d 491, 495 (2000). In Parkersmith, a man named Gwynn deeded property to the Johnsons. The parties agreed that Gwynn could buy the property back for a certain price. Their agreement prohibited Gwynn from assigning his right to repurchase:
It is specifically understood, contracted and agreed that this installment contract shall not be assigned by Gwynn, nor shall Gwynn convey or attempt to convey the subject real property or any rights hereunder, without the prior written approval of Defendants.
Parkersmith, 525 S.E.2d at 492 (internal brackets omitted). Despite this agreement, Gwynn assigned his rights under the agreement to Parkersmith. Parkersmith tendered purchase money to the Johnsons, who refused to sell. Parkersmith sued the Johnsons for interference with contractual relations, and the trial court dismissed the claim on summary judgment. Parkersmith contended on appeal that the Johnsons' withholding of consent to the assignment was unreasonable and therefore void as against public policy. The Parkersmith court disagreed and affirmed the summary judgment dismissal, holding that anti-assignment clauses are generally "valid and enforceable":
Assignments are governed by the general principles of contract law, and "provisions *776 in bilateral contracts that forbid or restrict assignment of the contract without the consent of the obligor are generally valid and enforceable," 6 Am.Jur.2d Assignments § 21 (1999). We find no authority in North Carolina for Plaintiff's argument that a party may not withhold its consent to an assignment under a valid non-assignment clause unless the party's withholding of consent is reasonable. Defendants' withholding of their consent to the assignment, therefore, was not void as against public policy.
Parkersmith, 525 S.E.2d at 495 (citations omitted).
¶ 57 The contracts at issue in this case prohibit assignment in clear and unambiguous terms. Rapid has not explained why, in deciding whether these clauses are enforceable, we should look beyond Parkersmith. Rapid has not shown that North Carolina has adopted the Restatement approach.
¶ 58 The rule as stated in Parkersmith is consistent with Washington law. See, e.g., Portland Electric & Plumbing Co. v. Vancouver, 29 Wash.App. 292, 295, 627 P.2d 1350 (1981) ("The primary purpose of clauses prohibiting the assignment of contract rights without a contracting party's permission is to protect him in selecting the persons with whom he deals"), cited by the majority and dissent in Rumbin, 757 A.2d at 533-34, 538-39. Parkersmith demonstrates that anti-assignment clauses in contracts are enforceable in North Carolina at the instance of an obligor, and that an assignment without the obligor's consent is ineffective. Parkersmith does not suggest the need for particular language of "power" rather than "right"; it does not demand proof that the clause was intended to benefit the obligor or that the obligor has a legitimate interest in avoiding assignment; it does not inquire into the weight of the burden that implementing the assignment will place upon the obligor; and it does not limit the obligor to a remedy in damages.
¶ 59 Rapid contends that because anti-assignment language is standard in structured settlement documents, enforcing the anti-assignment clauses will render the structured settlement protection acts useless. According to Rapid, Congress and the various States have enacted their statutes specifically to defeat anti-assignment language. But Rapid has not pointed out any feature of the statutes declaring or even implying such to be the legislative intent. See Rumbin, 757 A.2d at 530 (Connecticut structured settlement protection act "does not abrogate the common-law right to include an antiassignment provision in such an agreement or annuity.").
¶ 60 We conclude that the anti-assignment clauses in the settlement and annuity agreements for Dean and Hargette are enforceable by Symetra. Without Symetra's consent, the assignments by Dean and Hargette were ineffective. The courts below erred by ordering Symetra to deliver the assigned payments to Rapid's assignee.
¶ 61 The orders approving Rapid's application for approval of the transfers are reversed.
WE CONCUR: SCHINDLER, A.C.J., and ELLINGTON, J.
NOTES
[1] Clerk's Papers (Hargette) at 14 ("This Addendum shall be construed and interpreted in accordance with the laws of the State of North Carolina."); Clerk's Papers (Hargette) at 72 ("This contract shall be construed in accordance with and is amended to conform to the laws of the state in which [North Carolina Interlocal Risk Management Association] resides at the time of application.").
[2] Unless otherwise stated, all language quoted from the transfer agreements is the same for Dean and Hargette.
[3] Clerk's Papers at 23.
[4] Clerk's Papers at 169.
[5] Clerk's Papers at 190 (Qualified Assignment of Vanliner's liability to Symetra.)
[6] Clerk's Papers at 67.
[7] Clerk's Papers at 74.
[8] Brief of Respondent (Dean) at 26-27.