**IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2014

Lyle W. Cayce
Clerk

————

No. 13-20412

————

SYMETRA LIFE INSURANCE COMPANY; SYMETRA ASSIGNED BENEFITS SERVICE COMPANY,

Plaintiffs - Appellants Cross-Appellees

v.

RAPID SETTLEMENTS, LIMITED,

Defendant - Appellee Cross-Appellant

------------------------------------------------------------------------------------------------------------

RAPID SETTLEMENTS, LIMITED,

Plaintiff-Appellee Cross-Appellant

v.

SYMETRA LIFE INSURANCE COMPANY; SYMETRA ASSIGNED BENEFITS SERVICE COMPANY,

Defendants-Appellants Cross-Appellees

————

Appeals from the United States District Court
for the Southern District of Texas

————

No. 13-20412

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:

After nine years of litigation and a prior appeal to this court, three house-keeping items are presented in this appeal: attorneys' fees, damages, and the scope of injunctive relief. Appellants Symetra Life Insurance and Symetra Assigned Benefits Service (collectively "Symetra") appeal the district court's refusal to award attorneys' fees under the Texas and Washington State Structured Settlement Protection Acts ("SSPAs").[1] Rapid Settlements ("Rapid") cross appeals the district court's award of attorneys' fees as damages for tortious interference and the district court's permanent injunction, arguing that the injunction relies on an erroneous interpretation of the SSPAs.

Regrettably, in view of the interminable proceedings thus far, we must **REVERSE** and **REMAND** the district court's denial of statutory attorneys' fees, but we **AFFIRM** the district court's award of damages and permanent injunctive relief.

## BACKGROUND

Symetra and Rapid are participants in the market for structured settlement payments. Structured settlement payments are the result of tort lawsuits. To reduce the cost of settling claims, a tort defendant negotiates to pay the victims a large sum in installments over the victim's lifetime. The tort defendant then assigns the obligation to pay the installments to a company like Symetra Assigned Benefits Service. Following the assignment, Symetra

---

[1] The district court "assume[d], without deciding, that the Texas and Washington Acts apply to any transfer attempted that involves a Symetra annuitant." *Symetra Life Ins. Co. v. Nat'l Ass'n of Settlement Purchasers*, No. H-05-3167, 2012 WL 5880799, at*13 (S.D. Tex. Nov. 21, 2012). Because the Texas and Washington Acts are identical in all ways relevant to this appeal, and the parties do not argue otherwise in this court, we will refer to the statutes collectively as the "SSPAs" or the "Acts."

2

No. 13-20412

Assigned makes all future payments according to the settlement's terms. To fund the payments, Symetra Assigned buys annuities from Symetra Life Insurance.

A tort victim (called an "annuitant")[2] is not always satisfied with this arrangement—often he would prefer a large one-time payment in lieu of the smaller payments over time. As a result of the gap between the defendant's and victim's preferences, companies like Rapid (called "factors" in the industry) offer to pay the annuitant a lump sum now in exchange for the right to collect the annuitant's future payments. The factor's offer is usually much smaller than the discounted present value of the future payments, but an annuitant may accept the offer anyway, either because he does not understand the transaction or he needs the money. The factor profits by purchasing the future payments for much less than their worth.

"[T]o protect litigants . . . from transferring their rights to future periodic payments . . . for a lump sum that is inadequate[,]" many states enacted SSPAs. *RSL Funding, LLC v. Aegon Structured Settlements, Inc.*, 384 S.W.3d 405, 408 (Tex. App. 2012). Under the Acts, anyone trying to acquire structured settlement payment rights must disclose the amounts of future payments to be transferred, the discounted present value of those payments, the gross amount to be paid to the payee, the expenses to be deducted from the gross amount, and the net amount the payee is to receive. Tex. Civ. Prac. & Rem. Code § 141.003(1)-(6); Wash. Rev. Code § 19.205.020(1)-(6); *RSL Funding*, 384 S.W.3d at 408. Even then, a transfer is effective only if a state court finds that

---

[2] In the structured settlement market, the tort victims are alternatively called annuitants or payees. This title refers to their status vis-à-vis Symetra; because the victims are the beneficiaries of annuities purchased from Symetra Life, they are called annuitants; similarly, because they receive payments under obligations undertaken by Symetra Assigned they are payees. For simplicity, this opinion will refer to the tort victims as annuitants.

3

No. 13-20412

the "transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents." Tex. Civ. Prac. & Rem. Code § 141.004(1); Wash. Rev. Code § 19.205.030(1). If a factor fails to comply with these provisions, it is liable for any costs, including attorneys' fees, "arising as a consequence" of its non-compliance. *See* Tex. Civ. Prac. & Rem. Code § 141.005(2)(B); Wash. Rev. Code § 19.205.040(2)(b).

Rapid's systematic violations of the SSPAs are the root of this lawsuit. In the typical case, Rapid would contract with a Symetra annuitant, offering a lump sum in exchange for future payments. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.* (*Permanent Injunction Opinion*), 599 F. Supp.2d 809, 824 (S.D. Tex. 2008). Rapid would then seek state-court approval of the transfer. *Id.* at 820-21. Often, Symetra would appear in the state-court proceeding to object to the proposed transfer. *E.g.*, *id.* The state court usually sustained Symetra's objection, holding that the proposed transfer either violated the SSPAs or was not in the annuitant's best interest.[3] *Id.*

After the state courts rejected the transfers, disputes between Rapid and the annuitants inevitably arose. Sometimes the annuitants tried to cancel the contract, which is explicitly permitted under the SSPAs; other times, the annuitants tried to resell the future payments to another factor; and some refused to repay an advance Rapid made in anticipation of gaining state-court approval of the transfer. *Permanent Injunction Opinion*, 599 F. Supp. at 824-25. Rapid's standard contract required arbitration of "[a]ny dispute or disagreement arising under this Agreement of any nature whatsoever

---

[3] The transfers were not in the best interests of the annuitants because Rapid was offering only a fraction of the future payments' actual worth. For example, Rapid contracted with Abigail Dempsey to buy $96,000 in payments, with a discounted present value of $64,016, for $9,000. *Permanent Injunction Opinion*, 599 F. Supp.2d at 820-21. Likewise, Rapid contracted to buy Troy Walker's $210,000 in payments, with a discounted present value of $108,864, for $30,000. *Id.* at 823.

including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability hereof." *Id*. at 824 (internal citation and quotation marks omitted). Whatever the circumstances, Rapid invoked the clause to resolve these disputes.

The ensuing arbitrations were a sham—designed to circumvent the SSPAs' exclusive method for transferring future payments. All the arbitrations took place in Houston, Texas, where Rapid is located, regardless of where the customer resided. *Permanent Injunction Opinion*, 599 F. Supp. at 824-25. The (usually unrepresented) annuitants appeared telephonically, in front of Rapid's hand-picked arbitrators. *Id*. Under the guise of an arbitration award for a breach of contract, Rapid essentially re-offered the terms of the contract: Rapid would pay the annuitant the same lump sum if the annuitant agreed to an arbitration award that transferred the same future payments. *Id*. The annuitants agreed. *Id*. Then Rapid drafted an award declaring "that the proposed transfer satisfies all applicable statutory requirements." *Id*. at 825. With award in hand, Rapid ran to state court to convert the award into a judgment. After confirmation, Rapid informed Symetra that it owns the future payments—despite the state court's initial disapproval of the transfer.

Seeing this scheme for what it was—a naked attempt to circumvent the SSPAs—Symetra sued Rapid for tortious interference and violation of the SSPAs. As relief, Symetra asked for a declaration that Rapid's scheme contravened the SSPAs and that all of Rapid's attempted transfers with Symetra annuitants were ineffective. Symetra also sought damages, attorneys' fees, and an injunction preventing Rapid from transferring future payments via arbitration. The district court preliminarily and then permanently enjoined Rapid from conducting sham arbitrations with Symetra

annuitants to circumvent the SSPAs.  *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.* (*Preliminary Injunction Opinion*), No. H-05-3167, 2007 WL 114497, at \*2 (S.D. Tex. Jan. 10, 2007); *Permanent Injunction Opinion*, 599 F. Supp.2d at 847.  Symetra then sought summary judgment for attorneys' fees on its SSPA and tortious interference claims.  The district court denied Symetra's request for attorneys' fees under the Acts, but awarded it attorneys' fees incurred in a state court litigation as damages for tortious interference.  *See Symetra Life Ins. Co. v. Nat'l Ass'n of Settlement Purchasers* (*Attorneys' Fees Opinion*), No. H-05-3167, 2012 WL 5880799, at \*1 (S.D. Tex. Nov. 21, 2012).  These appeals followed.

## DISCUSSION

The parties present three issues on appeal.  Symetra argues that the district court should have awarded it attorneys' fees under the SSPAs.  Rapid argues that the court wrongfully awarded Symetra fees incurred in Indiana state court as damages for tortious interference.  Rapid also contends that the district court's injunction erroneously limited Rapid's ability to get first refusal rights.  We will address each issue in turn.

### I.     Statutory Attorneys' Fees

We first address whether the SSPAs entitle Symetra to attorneys' fees incurred in *this litigation*.  Because the SSPAs require *state court* approval of proposed transfers, this case implicates two levels of litigation (state and federal), each of which could give rise to attorneys' fees.  Except for the Gross litigation, discussed in Part II, Symetra has forsaken recovery of fees incurred in state court.  Rather, Symetra seeks only fees incurred in this federal litigation.  The district court held that these fees were unrecoverable.  It started with the premise that the SSPAs provide for attorneys' fees only "following a transfer" of structured settlement payments in violation of the statute.  According to the court, Symetra instead challenged "Rapid's general

business practices of using arbitrations and similar tactics to effect a transfer, which circumvented, and violated, the Acts." *Attorneys' Fee Opinion*, 2012 WL 5880799 at *14. The court noted that attorneys' fees could not be awarded for an injunction against future transfers. *Id*. at *15. Therefore, the court held that Symetra's fees were unrecoverable. *Id*. We disagree. Throughout this litigation, Symetra challenged up to ten individual transfers. For at least some of these, Symetra may be able to recover some of its attorneys' fees. Importantly, Symetra does not argue that the SSPAs allow recovery of all fees incurred in this federal litigation. Nor could it. To be recoverable, fees must arise from a factor's non-compliance with the Acts. Fees incurred to enjoin future violations of the Acts in unnamed cases do not arise from an SSPA violation, they precede it and are unrecoverable.

A. *Standard of Review and Applicable Law*

In this diversity case, we apply state substantive law, but federal procedural law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). "'State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.'" *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 415 (5th Cir. 2005) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). When the highest state court is silent on an issue we must make an *Erie* guess, using the sources of law that the state's highest court would look to. *DP Solutions*, 353 F.3d at 430-31. In both Texas and Washington the availability of attorneys' fees under a particular statute is a question of law subject to *de novo* review. *See Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 149 P.3d 666, 669 (Wash. 2006).

For attorneys' fees, Texas and Washington follow the American Rule: each party is responsible for its attorneys' fees unless a contractual or statutory

provision says otherwise.  *Cosmopolitan Eng'g Grp.,* 149 P.3d at 669; *Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992)

To encourage compliance, the SSPAs make noncompliant factors liable for attorneys' fees: "Following a transfer of structured settlement payment rights . . . the transferee shall be liable to the structured settlement obligor . . . [for] reasonable costs and attorneys' fees . . . arising as a consequence of the transferee's failure to comply with this chapter." Tex. Civ. Prac. & Rem. Code § 141.005(2)(B); Wash. Rev. Code § 19.205.040(2)(b).  This language creates three prerequisites to recovery:  the fees must follow a transfer of structured settlement payment rights; there must be a violation of the SSPAs; and there must be a causal connection between the violations and the fees incurred. Because the district court held that Symetra's federal court fees did not "follow a transfer" of payment rights, it did not address the SSPA violations involved in each case and the extent to which those violations caused Symetra to incur fees.  We need discuss only the first element in depth; the second is unchallenged; and the district court will determine the third element on remand.

The Acts define a transfer as "any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration[.]"  Tex. Civ. Prac. & Rem. Code § 141.002(18); Wash. Rev. Code § 19.205.010(18).  Under this definition, a transfer undoubtedly occurs if a state court approves a sale of structured settlement payments.  The more difficult question is whether a sale not approved by a state court is a transfer.  On this point, Texas and Washington courts have held a transfer "includes the transfer agreement between the payee and the transferee."  *RSL Funding*, 384 S.W.3d at 410; *see also Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 139 P.3d 411, 413 (Wash. App. 2006). Even if transfer agreements were not SSPA transfers, arbitration awards are.

No. 13-20412

*See Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707-08 (Tex. App. 2009).[4] Consequently, Symetra can recover its fees, so long as it challenged annuitants' contracts with, or arbitration awards in favor of, Rapid.

This litigation involved ten annuitants, each of whom signed transfer agreements with Rapid and were subjected to its sham arbitration scheme. Symetra's complaint referenced Rapid's attempt to buy future payments from Kenneth Gross and two unnamed Symetra annuitants. Symetra's preliminary injunction motion asked the district court "to enjoin Rapid from taking any action . . . with respect to the proposed transfer of [Candy Ann] Richardson's payment rights, pending further action by this court." Subsequently, Symetra sought to enjoin Rapid from taking further action with respect to five other annuitants: Mary Foreman, Thomas Remedies, Paul Patterson, Leslie Dean, and Robert Hargette. *Preliminary Injunction Opinion*, 2007 WL 114497 at *5. The district court eventually "enjoined [Rapid] from taking further action to compel Symetra to comply with the judgments entered in the *Richardson*, *Patterson*, and *Gross* matters pending the hearing on a permanent injunction" and required Rapid to further inform the court about the status of six of the contested transfers. *Id*. at *36. At the permanent injunction hearing Symetra showed that three additional Symetra annuitants, Abigail Dempsey, Robert Ayars, and Troy Walker, were subjected to Rapid's arbitration scheme. *Permanent Injunction Opinion*, 599 F. Supp.2d at 820-24.

---

[4] We assume Washington courts would find arbitration awards to be transfers given the plain language and purposes of the Acts. The statute's list is meant to encompass all possible attempts to transfer future payments including the "sale, assignment, pledge, hypothecation, *or other alienation or encumbrance*." Wash. Rev. Code § 19.205.010(18) (emphasis added). It makes only one exception for "security interest[s] in structured settlement payment rights under a blanket security agreement entered into with an insured depository institution . . . ." Wash. Rev. Code § 19.205.010(18). An arbitration award purporting to transfer future payments, like the ones Rapid obtained, undoubtedly is an encumbrance on or alienation of those payments.

This litigation, moreover, was Symetra's first opportunity to challenge most of the arbitration awards.  Symetra did not participate in the arbitrations, *id.* at 824, nor did it receive notice of Rapid's attempt to confirm the arbitration awards until the time to challenge them was effectively over. *Id.* at 825.  The Acts do not limit recovery of attorneys' fees to state court proceedings; a party can recover in any proper forum subject to the other requirements of the Acts.  Symetra's claim for fees as to each individual "follow[ed] the transfer" of structured settlement payments by means of the sham arbitrations.  Therefore, the SSPAs allow Symetra to recover some portion of its fees.

Symetra's failure to seek fees in the state SSPA proceedings does not mean it has not challenged any specific transfers here.  It is true that, in several cases, Rapid gave Symetra notice of the attempted transfer when it sought state court approval.  *See, e.g.*, *Preliminary Injunction Opinion*, 2007 WL 114497 at *6.  If Symetra received notice, it objected and won.  *Id.*  In those proceedings, as the district court correctly noted, although Symetra could have asked for attorneys' fees, it did not.  *Attorneys' Fee Opinion*, 2012 WL 5880799 at *15.  And its failure to do so bars recovery of fees incurred in those proceedings.  But this case is distinct from the state court proceedings because Symetra challenged different transfers: the arbitration awards obtained in the cases of Kenneth Gross, Candy Ann Richardson, Mary Foreman, Thomas Remedies, Paul Patterson, Leslie Dean, Robert Hargette, Abigail Dempsey, Robert Ayars, and Troy Walker.  The court awarded Symetra specific injunctive relief for three of those transfers, and the permanent injunction covered the other transfers.

Moreover, Rapid's argument—that failure to seek fees in state court means no specific transfers were challenged here—ignores that there can be separate SSPA violations, occurring at different times, each of which

10

potentially gives rise to an attorneys' fees claim. This case is a perfect example. Rapid first violated the SSPAs by proposing a transfer that a state court ultimately rejected. It then committed a second violation when it tried to transfer the payments via arbitration anyway. That Symetra declined to seek fees in the first proceeding cannot bar its attorneys' fee claim for the second violation on which the federal case is premised.

In sum, the district court erroneously held that Symetra could not recover any fees under the SSPAs. As the foregoing shows, specific transfers were challenged throughout this litigation. Symetra can recover some portion of its fees related to some of those transfers.

We stress, however, that under Texas law, Symetra is "required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). Fees that "relate solely to a claim for which such fees are unrecoverable" must be segregated. *Id.* To put a finer point on it, Symetra must separate fees related to the specific annuitants for SSPA violations from the fees incurred to enjoin future SSPA violations in unnamed cases and fees incurred to develop non-SSPA claims. A court can excuse the failure to segregate only when discrete legal services advance both a recoverable and unrecoverable claim. *Id.* at 313-14.

Rapid argues that the district court denied Symetra's fee request partially because of inadequate segregation, hence remand is inappropriate. At the time, however, Symetra believed all of its fees were recoverable, either under the SSPA or as damages for tortious interference. *See Attorneys' Fee Opinion*, 2012 WL 5880799 at *16-17. In addressing fee segregation, the district court's opinion is unclear. Its segregation discussion begins by noting that "Symetra did not attempt to segregate its fees [ ] for tortious interference" from its other claims. *Id.* On its own, this suggests the court denied Symetra's

11

claim for fees as damages for tortious interference because of inadequate segregation. But then the court concludes, "[t]he record continues to provide an insufficient basis to award Symetra its fees and costs incurred in this litigation on the basis of the attorney-fee provisions in the Texas and Washington Acts." *Id.* at 17. Because Symetra moved for fees under multiple theories and the district court ruled no specific transfers were challenged here, it is unclear which fee claim was denied on segregation grounds. Accordingly, remand is appropriate. But Symetra bears the burden of segregating fees, and the district court retains discretion to deny Symetra's attorneys' fees request for failure to segregate.[5]

## II.    Fees as Damages for Tortious Interference

Symetra also sought fees incurred in state court with respect to one annuitant, Kenneth Gross, as damages for tortious interference under Texas law. The district court granted Symetra's request and awarded $87,859. *Attorneys' Fee Opinion*, 2012 WL 5880799 at \*20. Rapid now appeals that part of the district court's ruling.

An attorneys' fee award in Texas will not be disturbed absent an abuse of discretion. *Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 319 (Tex. App. 2010); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 341 (5th Cir. 2008). However, any "findings of fact regarding the reasonableness of attorney's fee awards are reviewed for clear error." *American Rice*, 518 F.3d at 341.

---

[5] For example, the parties settled Thomas Remedies's case during the litigation and the district court's injunction did not address it. *Preliminary Injunction Opinion*, 2007 WL 114497 at \*12-13, 36. On remand, we leave it to the district court to decide whether, under these circumstances, Symetra can recover any fees related to the Remedies transfer.

Rapid also argues that Symetra did not make the required Rule 26 disclosures, and therefore, Symetra cannot recover its fees. We do not address this argument, however, because it was raised for the first time in Rapid's reply brief. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 260 n.9 (5th Cir. 1995).

No. 13-20412

Under Texas law, "'necessary and reasonable attorneys' fees and costs even though expended and incurred in previous litigation can be recovered as proper damages in a later suit based on tortious interference of [sic] contract.'" *DP Solutions Inc.*, 353 F.3d at 431 (citing *Texas Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex. App. 1994) *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996)).[6] But the "exception is limited to situations where the natural and proximate results and consequences of prior wrongful acts had been to involve a plaintiff . . . in litigation." *Id.* (internal citation and quotation marks omitted).

The natural and proximate result of Rapid's conduct toward Gross was to drag Symetra into Indiana state court litigation, and therefore, the district court's damage award was proper. Like the others, Gross contracted to sell his future payments to Rapid. *Attorneys' Fee Opinion*, 2012 WL 5880799 at *17-20. Rapid did not obtain approval to transfer Gross's future payments in Indiana state court. *Id.* Later, Rapid alleged that Gross breached the contract and compelled arbitration. *Id.* Gross "agreed" to an arbitration award that transferred all future payments to Rapid. *Id.* Rapid sought, and obtained, confirmation of the arbitration award in Texas state court. *Id.* Symetra, after finding out about the award in July 2005, successfully moved the Texas trial court to vacate it. *Id.* On appeal, the Texas First Court of Appeals held that

---

[6] Texas appellate courts disagree on the recoverability of attorneys' fees as damages. *See Martin-Simon v. Womack*, 68 S.W.3d 793, 797-98 (Tex. App. 2001) ("Under various circumstances, some of our sister courts of appeals have adopted an equitable exception to the general rule of non-recovery of attorney's fees in tort cases. However, neither the Texas Supreme Court nor this court has adopted any [ ] exception to this rule and we decline to do so in this case.") (footnotes omitted). And the Texas Supreme Court has not resolved the conflict, yet. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009) ("we need not and do not address whether the [litigation exception] should be adopted as Texas law"). Nevertheless, because this Court has already decided that the Texas Supreme Court would adopt the exception, we will continue to assume attorneys' fees are recoverable as damages. *See D.P. Solutions*, 353 F.3d at 430-31.

the trial court lacked jurisdiction to vacate its judgment, but refused to enforce the arbitration award against Symetra. *Id.*

While all this was happening, Gross contracted with Kent Niemeier to buy land. When Gross failed to complete the deal, Niemeier sued him and an Indiana court awarded Niemeier a nearly $113,000 judgment. *Attorneys' Fee Opinion*, 2012 WL 5880799 at *17-20. In November 2005, Niemeier garnished a $150,000 payment that Symetra owed Gross. *Id.* In August 2006, before Symetra was scheduled to make the $150,000 payment, Rapid notified Symetra of the arbitration award and demanded the payment. *Id.* Based on the Indiana garnishment order and the Texas Court of Appeals' ruling, Symetra refused. *Id.* Meanwhile, Niemeier moved to hold Symetra in contempt for not paying the garnished funds. *Id.* Symetra appeared in Indiana state court to contest the contempt motion. *Id.* It impleaded Rapid and asked for a declaration that Rapid's attempted transfer via arbitration violated the Indiana Structured Settlement Protection Act. *Id.* The Indiana court agreed and declared Rapid's attempted transfer invalid. *See Niemeier v. Gross*, No. 65C01-0504-PL-00105, 2008 WL 4892985 (Ind. Cir. Ct. Apr. 10, 2008).

Contrary to Rapid's assertions, Symetra's involvement in the Indiana litigation was completely foreseeable. Rapid was on notice, at least since 2006 and probably earlier, that its arbitration scheme violated various State Structured Settlement Protection Acts.[7] An annuitant like Gross—a victim of

---

[7] *See In re Rapid Settlements Ltd.'s Application for Approval of Structured Settlement Payment Rights*, 136 P.3d 765, 774-76 (Wash. App. 2006) (North Carolina); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06-4989, 2007 WL 1377667 (E.D. Penn., May 8, 2007) (Pennsylvania); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164 (3d Cir. 2009) (same); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 06-CV-6554L, 2007 WL 2530098 (W.D.N.Y., Sept. 5, 2007) (New York); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, 309 F. App'x 459 (2d Cir. 2009) (unpublished) (same); *R&Q Reins. Co. v. Rapid Settlements Ltd.*, No. 06-14239-CIV, 2007 WL 2330899 (S.D. Fla., Aug. 13, 2007) (Florida); *Allstate Life Ins. Co. v. Rapid Settlements Ltd*, 328 F. App'x 289, 290 (5th Cir. 2009) (unpublished) (per curiam) (Mississippi).

No. 13-20412

Rapid's sham-arbitration scheme—still maintained a claim to his annuity payments because the transfers violated the Acts.  Accordingly, a dispute could arise among the annuitant, Rapid, and Symetra over the proper payee.  If an annuitant could assert a competing claim to the funds, one can imagine an annuitant's creditor asserting its own claim.  Although Rapid may not have foreseen the exact nature of the dispute, it must have known the funds it sought could be subject to conflicting claims.  To resolve these disputes, litigation would almost surely ensue.

Nevertheless, Rapid argues Symetra cannot recover fees for the Gross litigation because Symetra "voluntarily interjected itself" into the Gross litigation; the attorneys' fees must be incurred fighting third parties, and these were not; there must be a history of prior acts before awarding attorneys' fees as damages, and there is none; and Symetra's status as a garnishee in the Indiana state court bars recovery.  None of these arguments has merit.

Rapid's assertion that Symetra "voluntarily interjected" itself into the Gross litigation is inaccurate.[8]  Symetra did not enter the Indiana litigation voluntarily—it was forced.  The $150,000 payment owed to Gross was subject to conflicting claims by Rapid and Niemeier.  Given the competing claims, Symetra withheld the money until it was sure whom to pay.  Only after Niemeier moved to hold Symetra in contempt did it enter the fray.  Thus, Symetra's entry wasn't voluntary, it was compulsory.  Once involved, Symetra had to litigate the entire dispute once and for all.  Gross was scheduled to

---

[8] Relatedly, Rapid contends Symetra cannot recover because it initiated the underlying litigation.  Like its "voluntarily interjected" argument, this too is meritless.  Rapid's own brief points out, if its conduct forces Symetra "*to prosecute or defend* litigation in another proceeding," Symetra can recover.  In the Indiana litigation, Symetra was both prosecuting and defending various actions.  It was defending itself against contempt and garnishment orders and prosecuting Rapid for its unlawful behavior via a third-party complaint for declaratory relief.  The fact that Symetra initiated the underlying litigation does not bar recovery.

receive payments from Symetra until 2036, and Rapid bought most of these payments. *Preliminary Injunction Opinion*, 2007 WL 114497 at \*10. It is almost certain that future creditors of Gross would try to access the funds, leading to conflicting claims between the creditor and Rapid. Symetra could not—and should not—wait for these creditors to sue it in the future, when the whole dispute could be definitively settled in a forum it was already forced to be in.[9] Future litigation was foreseeable and inevitable.

Rapid also contends that Symetra cannot recover attorneys' fees because its actions did not force Symetra to litigate with third parties—it only litigated against Rapid. This is not only factually inaccurate, but legally baseless. Symetra was forced to litigate against Niemeier, a third party, in the Indiana garnishment proceeding. Regardless, under Texas law, attorneys' fees are recoverable even if they were incurred fighting the tortious interferer. *See Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90 (Tex. App. 1997). Therefore, Rapid's involvement in the Gross litigation does not prevent Symetra's recovery.

Moreover, Rapid contends there must be a history of prior wrongful acts before a court can award attorneys' fees as damages. Because the Gross arbitration was its first bad act, there "is no basis to assert that there were . . . prior wrongful actions." But that isn't the law. In Texas, a single wrongful act is enough to recover damages. *See Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 839 (Tex. App. 1984) (awarding attorneys' fees based on a single bad act). Rapid cites no cases suggesting otherwise. Moreover, the statement from *DP Solutions, Inc. v. Rollins, Inc.*, on which Rapid relies, is taken out of context.

---

[9] For these same reasons, it is unreasonable to expect Symetra to file an interpleader action. The Gross litigation involved twenty-two years' worth of payments, all of which were subject to conflicting claims. It would make no sense for Symetra to kick the can down the road, knowing that future litigation with Rapid over the Gross payments was inevitable.

No. 13-20412

This court's reference to "prior wrongful acts" dealt with the existence of a litigation exception in Texas law.  353 F.3d at 431.  In *DP Solutions*, the only prior wrongful act supporting attorneys' fees was Rollins's attempt to hire DP Solutions' employees.  *Id.* at 426.  Nevertheless, this court upheld the jury's award of attorneys' fees.

Finally, it makes no difference, as Rapid claims, that Symetra was a garnishee in Indiana state court.  Although Texas courts have stated generally there is no contractual or statutory ground for attorneys' fee recovery in garnishment proceedings, none has held that garnishee status makes fees unrecoverable as damages.  *See Henry v. Ins. Co. of N. Am.,* 879 S.W.2d 366, 368-69 (Tex. App. 1994).  The only requirement, fully satisfied here, is that the fees are the natural and probable consequence of the tortious act.

## III.   Terms of the Permanent Injunction

Rapid perfunctorily appeals one aspect of the district court's permanent injunction.  Specifically, Rapid argues that the SSPAs do not require explicit state court approval of first-refusal rights.  In fact, Rapid asserts many state-mandated disclosure forms require listing first-refusal rights.  Therefore, the district court's requirement that state court transfer orders also list first-refusal rights contravenes the SSPAs.  We find no error, however, in the court's analysis of first refusal rights under the SSPAs

This court reviews permanent injunctions for abuse of discretion. *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916-17 (5th Cir. 1996).  An abuse of discretion occurs when the district court "(1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction[,] (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." *Id.*

17

No. 13-20412

The district court's holding—that the SSPAs require court approval of first-refusal rights—is correct. A transfer is "any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights[.]" Tex. Civ. Prac. & Rem. Code § 141.002(18); Wash. Rev. Code § 19.205.010(18). Washington courts have held that first-refusal rights are encumbrances under its Act. *See In re Rapid Settlements Ltd.'s Application for Approval of Structured Settlement Payment Rights*, 136 P.3d 765, 770 (Wash. App. 2006) (holding that first-refusal rights are "an additional means by which the transfer agreement encumbers all of the periodic payments"). Texas courts are likely to follow suit, given that a transfer includes "*any* encumbrance" of future payment rights. Tex. Civ. Prac. & Rem. Code § 141.002(18) (emphasis added). Because all transfers must be "approved in advance in a final court order," Tex. Civ. Prac. & Rem. Code § 141.004; Wash. Rev. Code § 19.205.030, the Acts require Rapid to get explicit court approval of first-refusal rights.

Rapid argues that because the disclosure of first-refusal rights is already required by state-mandated disclosure forms, requiring state court orders also to identify the first-refusal rights contravenes the SSPAs. This is nonsense. Rapid cites no state-mandated forms to support its position. Even if it had, the fact that a form requires disclosure of first-refusal rights is consistent with requiring that they also be listed in the state court's order. The disclosure statement is provided to the annuitant three days before he signs a transfer agreement. Tex. Civ. Prac. & Rem. Code § 141.003; Wash. Rev. Code § 19.205.020. This requirement does not change a factor's obligation to obtain explicit court approval of all transfers, including first-refusal rights. To decide whether a transfer is in the best interest of the annuitant, the state court needs to know exactly what the transfer consists of. The district court's interpretation correctly applies the SSPAs.

18

No. 13-20412

## CONCLUSION

For these reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent herewith.